# Harris, Appellant, v. Brown.

*Trade-mark—Partnership name—License.*

While a mere license without consideration is determinable at the pleasure of the licensor, this is not the rule where the enjoyment of the license must necessarily be, and is, preceded by the expenditure of money. In such cases the license becomes an agreement on a valuable consideration and is irrevocable.

Where a mother purchases at sheriff's sale the property of a partnership, composed of her two sons, and the sons authorize their mother to use the firm name, which at the time is valueless, in the continuation of the business, and the mother by the expenditure of large sums of money and the application of proper business methods, makes the business a success and gives the partnership name a value which it did not possess at the time she began to use it, neither of the sons can, after the expiration of four years, maintain a bill in equity to enjoin their mother from further using the name.

Argued Jan. 17, 1902. Appeal, No. 266, Jan. T., 1901, by plaintiff, from decree of C. P. No. 2, Phila. Co., March T., 1898, No. 900, on bill in equity in case of Andrew Harris v. Martha A. Brown and Carl A. Gunther. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

SULZBERGER, J., found the facts to be as follows:

1. Prior to June, 1894, the plaintiff and his brother, Earnest L. Harris, carried on the business of manufacturing gas meters at Twelfth and Brown streets, in the city of Philadelphia, under the firm name of Harris Brothers & Company. The name of Harris Brothers & Company is valuable, one John Gribbel having agreed to pay $1,500 for it.

2. On June 14, 1894, the partnership was dissolved by the withdrawal of Earnest L. Harris, the right being granted to the plaintiff to trade under the old firm name.

3. In payment of Earnest's interest, the plaintiff gave him $250 in cash and a judgment note for $8,745.61, bearing six per cent interest, with a collateral agreement stipulating that no judgment should be entered thereon if, on or before the 20th day of every month, $250 would be paid on account

thereof.   Andrew on his part was not to sell the business without the consent of Earnest, and if he failed in this respect, or in a monthly payment, or had suits or judgments against him, Earnest had the right to enter judgment on the warrant of attorney in the aforesaid note and issue execution thereon.

4. Shortly thereafter, and in violation of this agreement, Andrew gave a usurer, named Holzman, a judgment note for $645, and Earnest sold to the same man Andrew's judgment note of $8,745.   Judgments were entered on both notes, executions issued, and Andrew's business was levied on.

5. The defendant, Martha A. Brown, who is the mother of Andrew and Earnest Harris, on July 25, 1894, paid the sum of $10,256.17 and became the use plaintiff in the Holzman judgments and another judgment of $509.25.   She mortgaged her real estate and pledged bonds to raise this money, which she paid to the execution creditors.

6. The plaintiff then gave his mother an assignment of the outstandings due his firm, being of the nominal value of $1,581.27.   On or about the first Monday of August the sheriff, by virtue of an execution, sold the machinery, stock of goods, and unexpired term of the lease for the sum of $2,282, and Mrs. Brown became the purchaser.   The two sums were largely insufficient to pay the amount of the plaintiff's executions.

7. Besides the aforesaid judgments assigned to Mrs. Brown she issued execution on a judgment against the plaintiff and his brother Earnest for $4,628.

8. The defendant, Martha A. Brown, from the time of her purchase at sheriff's sale, has carried on the business under the name of Harris Brothers & Company, and still carries on the same.

The plaintiff claims that the sheriff's sale, under which the defendant Martha A. Brown acquired title, was in effect a transfer to her of his business on the trust and confidence (*a*) that he should be consulted in its management; (*b*) that James C. Mullen should be the manager of the business; (*c*) that she should pay the debts out of the profits; (*d*) that this being accomplished, she should retransfer the business to the plaintiff.

This theory seems to require a basis which is lacking in this **case.**   The executions issued were on judgments which had

been entered against Andrew Harris without his knowledge, expectation, or acquiescence. They were hostile, and he was in no position to direct the sheriff, who was bound by the exigency of the writ. Martha A. Brown, who acquired the rights of plaintiff in the executions by paying the execution creditor out of her own moneys, dealt with the plaintiff in the executions and not with the defendant.

It is true that the defendant is her son; that he was in difficulties, and that the business, which was looked upon as a sort of family heritage, was threatened with extinction. Under these circumstances it is probable that she wanted to save the business, and that she had the children's interest in view in that and other things. But such a situation is very far from the act of making a contract with a helpless person to give him control of the new resources obtained by unpleasant sacrifices when he had just shown his incapacity to manage his own.

All the evidence of the making of the contract averred by the plaintiff is vague and insufficient. Its frivolous character may be judged from the statement of the plaintiff that he transferred his interest in the business to his mother, and that "it was stated," "that when I would be able to return the money to her that she had advanced me, why she would return me the business." The transaction whereby his mother mortgaged her real property and pledged her personal property in order to raise a sum exceeding $10,000, wherewith to buy the judgments executed against him, he describes as a transfer of the business by himself, the only possible ground for such a misdescription being that he transferred to his mother book accounts of the nominal value of $1,581.27. The attempted corroboration by Mullen, Collins and Harris was equally vague and unsatisfactory, while the positive denials by Mrs. Brown and Mr. Freeman accorded with the circumstances and the probabilities.

The court therefore finds the fact that no such contract as is alleged by the plaintiff was made with him by his mother.

No evidence was produced to charge the defendant, Carl M. Gunther, and as to him the bill must be dismissed.

The only question remaining to be considered is the right of the plaintiff to the use of the name Harris Brothers & Company.

On our findings the defendant Martha A. Brown's rights in the business were acquired at the sheriff's sale. The execution creditor cannot order a levy on a defendant's name or procure a sale thereof. In point of fact, there is no pretense that the sheriff sold or the defendant Martha A. Brown bought such a name. It may well be that the plaintiff's conduct after the sale amounted to a license to his mother to use it, but even in that event it was a license without consideration and revocable at the will of the licensor.

Under ordinary circumstances, therefore, a decree should be entered declaring that the plaintiff is the owner of the name of Harris Brothers & Company, and is entitled to carry on the business of making gas meters under that name, and that the defendant, Martha A. Brown, should be perpetually restrained by injunction from using said name, Harris Brothers & Company, in connection with her business in anywise whatever.

But the circumstances of this case are extraordinary. The name which doubtless belongs to the plaintiff has been sold by him to John Gribbel, and part of the consideration money has been received by the plaintiff. If we were to enter a decree in the latter's favor, and John Gribbel should use the name, we would not, at the instance of the plaintiff, restrain him. The effect of a decree would therefore be to assure to John Gribbel the fruit of his agreement with the plaintiff.

In view of the character of this agreement, we are not prepared to produce such a result.

The plaintiff has never had, and has not now, any money wherewith to buy or redeem the business from his mother. From the evidence presented in this case and in the case of Gribbel v. Brown (tried with it), we learn that the plaintiff entered into an arrangement to drive his mother out of business by selling the establishment to a rival concern, Griffin & Company, of which the said John Gribbel is a member. With this John Gribbel the plaintiff made a written contract on April 2, 1898, wherein it was recited that the said Andrew Harris has the right to the trade name of Harris Brothers & Company; that prior to July, 1894, he owned the plant, goodwill, fixtures, machinery and appurtenances of the business at Twelfth and Brown streets; that during said month the same was levied on by the sheriff and sold to Martha A. Brown; that

he claims that the purchase by said Martha A. Brown was with the agreement and understanding that she should hold the same in trust; that after collecting the amount paid by her at said sale, and such other amounts as she should be required to advance to carry on the business, she should reassign the said plant, fixtures, machinery and stock to said Andrew; that said Martha has refused so to do, and claims the property as her own; that said Andrew is desirous of bringing appropriate proceedings in law or equity to enforce his rights, but is without means to carry on said litigation suitably; that the said Gribbel is desirous of acquiring the exclusive right to use the name of Harris Brothers & Company, and is also willing and desirous to purchase at value the stock, fixtures, machinery and plant, and with that view is willing to make certain advances to said Andrew for the purpose of aiding him in the assertion and enforcement of his right as claimed.

And it was therefore covenanted:

(*a*) That Andrew agreed to sell and Gribbel agreed to buy the exclusive use of the said trade name for $1500—$500 thereof payable presently, to be used by Andrew in bringing the appropriate proceedings for the vindication of his rights; $250 thereof, if required, within a year for further prosecution of said suits, and the balance of $750 when the title to the use of the name shall be fully established and properly transferred to Gribbel.

(*b*) Gribbel agrees that if Andrew gets a decree for account and return of plant, fixtures, machinery and stock, he will lend Andrew the amount requisite to redeem on the pledge of the redeemed property.

(*c*) Andrew will then sell to Gribbel the redeemed property at value on fair appraisement.

This contract by Gribbel is mere champerty—a bargain with the plaintiff for a portion of the matter sued for, in case of a successful termination of the suit, which the champertor undertakes to carry on at his own expense: Bouvier's Law Dictionary.

The rule against this misdemeanor applies as well in equity as at law: Lord Chancellor ELDON in Wood v. Downes, 18 Ves. 120.

The class of cases of which Perry v. Dicken, 105 Pa. 83,

is a type make a distinction in the cases of attorneys at law, on the ground of necessity of their services and the inability of the moneyless to obtain them without speculative rewards. Neither these cases nor their reasoning apply to mercantile speculators in the quarrels of their neighbors, who are still viewed by the law as champertors.

In our opinion, therefore, the bill should be dismissed at the costs of the plaintiff.

*Error assigned* was decree dismissing the bill.

*R. L. Ashhurst* and *John G. Johnson*, for appellant.

*John F. Keator* and *Richard C. Dale*, for appellees.

OPINION BY MR. JUSTICE MESTREZAT, March 3, 1902:

The learned trial judge very properly found that Mrs. Brown did not purchase the machinery and stock of goods of Harris Brothers & Company, at the sheriff's sale in pursuance of a contract with Andrew Harris to continue the business in trust for him, and, subsequently, to transfer it to him. The four years of management of the business by him and his brother had brought the firm to insolvency and rendered the firm name commercially valueless. Mrs. Brown, his mother, knew these facts, and could have had no desire or intention to place the business again in the hands of her son. To preserve the business and to put it on a paying basis required that Andrew Harris's connection with it should cease. He had demonstrated conclusively his unfitness to manage it successfully and further control of it by him as manager or owner would have insured its total destruction. The facts disclosed by the testimony show that Mrs. Brown was acting for herself and with no intention of reinstating Andrew Harris in the gas meter business.

Immediately after the sheriff's sale at which Mrs. Brown had acquired the title to the personal property of Harris Brothers & Company, and before she began to manufacture gas meters, a conference took place at the office of her counsel in which he, Mrs. Brown and Andrew Harris participated. They discussed the manner in which the business should be carried on

and the name under which it should be conducted.   Mr. Harris suggested that there should be as little change in the conduct of the business as possible and agreed that the business should be continued indefinitely in the name of Harris Brothers & Company.   In addition to this express assent, his subsequent conduct was clearly a license to Mrs. Brown to use the firm name in the transaction of the business.   It is contended, however, on the part of the plaintiff, that the consent of Harris to the use of the firm name did not authorize his mother to use it against his objections; that he could withdraw his permission at any time and that thereafter the right of Mrs. Brown to use the firm name in her business ceased.   The learned trial judge took this view and held that "it was a license without consideration and revocable at the will of the licensor."   It is undoubtedly true that a mere license without consideration is determinable at the pleasure of the licensor.   But that is not the rule in this state where the enjoyment of the license must necessarily be, and is, preceded by the expenditure of money.   In such cases, the license becomes an agreement on a valuable consideration and is irrevocable: Rerick v. Kern, 14 S. & R. 267; McKellip v. McIlhenny, 4 Watts, 317; Willis v. Erie City Pass. Railway Co., 188 Pa. 66.   We can see no reason why this principle is not applicable here.   At the time Mrs. Brown purchased the property at sheriff's sale, there was practically no value in the good-will of the business or in the firm name.   The firm of Harris Brothers & Company was composed of Andrew Harris and Earnest L. Harris and had been in exitence only since 1890.   Commercial value in connection with the gas meter business had been given the name " Harris," not by the success of this firm, but by that of Harris, Griffin & Company, in which Andrew Harris, senior, the father of Andrew and Earnest L. Harris, was a member.   The gas meter business conducted under the firm name of Harris Brothers & Company was unsuccessful, and in 1894 culminated in insolvency and a sheriff's sale of the personal property, the proceeds of which were insufficient to liquidate the firm's indebtedness.   The cause of the failure is immaterial; the fact is important.   It was at this time, when the name of Harris Brothers & Company had no commercial value in the business of manufacturing gas meters, that Andrew Harris suggested to his mother that she use the

name in continuing the business. She acted upon the sug-
gestion and proceeded to carry on the business in that name.
By the necessary expenditure of money and the application of
proper business methods, Mrs. Brown was successful. In this
way she established a reputation for the name of Harris Brothers
& Company and gave it commerical value which, as far as the
testimony discloses, it did not possess at the time she began to
use it. After nearly four years and the expenditure of large
sums of money with the knowledge and consent of the plain-
tiff in building up the business by which alone the name was
given value, this bill is filed by the plaintiff to deprive the
defendant of the property value she has given to it. To per-
mit such a result would be inequitable and unjust. Having
suggested, and consented to, the use of the firm name in con-
tinuing the business, Harris is not now, under the circum-
stances shown by the testimony, in a position to demand of his
mother that she discontinue its use or account for any moneys
realized by its use. The plaintiff is here invoking the aid of a
chancellor, not to enforce an equity, but to deprive another of
property to which she is both equitably and legally entitled.
He could not succeed in a court of law and with much less
reason should he be permitted to enforce his claim in a court
of equity.

The assignments of error are dismissed and the decree is
affirmed.