No. 11,284.

ROGERS v. FIRST STATE BANK OF AGUILAR.

Decided February 15, 1926.

Action on promissory note. Judgment for plaintiff.

*Affirmed.*

1. BANKS AND BANKING—*Official Authority—Note—Agreement.* An executive officer of a bank has no implied authority to bind it by a promise that one who signs a note in its favor shall not be required to pay it.

2. BILLS AND NOTES—*Action—Defense.* In an action by a bank on a promissory note, a defense that the note was given to avoid criticism by the state bank examiner and upon an understanding that the maker would not be required to pay it, is contrary to law and sound public policy, upon which no relief can be granted.

3. BANKS AND BANKING—*Promissory Note—Defense.* In an action by a bank on a promissory note given to deceive the bank examiner under an agreement that the maker would not be required to pay it, the contention of defendant, that while it might be collected by a receiver for the benefit of depositors and creditors, that the bank could not enforce payment, overruled.

4. *Statutes—Waiver.* There can be no waiver by bank officials of the provisions of a banking law enacted for the benefit of banks and protection of the public at large.

5. BILLS AND NOTES—*Promissory Note—Consideration.* A promissory note given to a bank by an individual stockholder and officer of a corporation for the purpose of reducing the amount of an excess loan to his company, to which the state bank examiner had objected, is based upon a valid consideration.

6.        *Promissory Note—Payment.* In an action by a bank upon a promissory note given by a stockholder of a corporation, a plea of payment based upon the claim that the corporation had given a new note to replace the one executed by him, is overruled.

7.        *Promissory Note—Collateral—Action.* The holder of a note has the right to sue upon it, even if held as collateral to another which is unpaid.

*Error to the District Court of Las Animas County, Hon. A. C. McChesney, Judge.*

Mr. HARVEY STARBUCK, Mr. JOHN L. EAST, for plaintiff in error.

Messrs. HAWLEY & ERICKSON, for defendant in error.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE First State Bank of Aguilar, defendant in error, was plaintiff in the district court. It obtained judgment against Earl Rogers in a suit upon a promissory note. Rogers brings the case here for review. The parties will be referred to as plaintiff and defendant, as in the trial court.

Defendant was a stockholder and also president and manager of the Rogers Farming and Live Stock Company, a corporation, the capital stock of which was owned by defendant, his brother, since deceased, and his father. The company owed the plaintiff bank $9,350, evidenced by two of its corporate notes, one for $6,850, and the other for $2,500. The State Bank Commissioner

objected to the size of the credit extended to the company by the bank, on the ground that it was excessive and contrary to law and the banking regulations.

With the above situation before the parties, defendant and his deceased brother executed and delivered to the bank their personal note for $2,500, to reduce the excess loan to the corporation. The corporate note was thereupon marked "Paid" and was so shown on the books of the bank, and the new note was substituted for the old one, although it appears that the corporate note, as well as the Rogers personal note, remained in the bank files. The bank is a going concern.

At the time that the defendant executed his personal note to the bank, one Emberton, who was then the bank president, gave defendant a separate memorandum, in the following words:

"Aguilar, Colorado, July 5, 1922.

"This is to certify that Jeff Rogers and Earl Rogers have this day and date signed a note for $2,500.00 with the First State Bank of Aguilar, Colo., and which note is to be taken up by said bank without cost of any nature whatsoever to the said Jeff and Earl Rogers. *It merely reduces an excess loan to the Rogers Farming and Live Stock Co.* (The italics are ours.)

"W. T. Emberton."

The defendant kept the above memorandum and the bank kept the note and included it among its assets. No officer of the bank, other than Emberton, knew about the above separate memorandum when it was made, nor did the State Bank Commissioner know of it. Emberton is no longer connected with the bank.

After maturity, the bank sued Earl Rogers and Jeff Rogers on their personal note. There was no service on Jeff Rogers, he having died after the suit was brought. Upon his death the action was dismissed as to him but was continued to final judgment against Earl Rogers, which is the matter now here on review.

Defendant's first argument goes to the question of the validity of the above contemporaneous agreement; second, that the note sued upon was given without consideration; and third, a plea of payment.

1.   As to the above agreement signed by Emberton: Defendant, although admitting that he and his brother signed the personal note, and that it was delivered to the bank, makes this defense, relating to the above side agreement, which we quote from defendant's answer: "Defendant Earl Rogers further says that said pretended note was so solicited and obtained as aforesaid *merely for appearances* (the italics are ours) in order to avoid criticism by the State Bank Examiner because of excess loans from plaintiff bank to the Rogers Farming and Live Stock Company aforesaid, and for no other purpose.   That it was then and there distinctly understood and agreed by and between plaintiff and defendants that no money, property, or any other thing of value should go to defendants or either of them upon, or because of, their signing and delivering said pretended note, or at all."

The above defense, in connection with the evidence, as well as the separate agreement itself, disclose that defendant intended to reduce the excess debt of the corporation in which he was a stockholder, and also the president and manager thereof, and to give it a pretended financial standing by making it seem that the orders of the State Bank Commissioner had been complied with, whereas, they were not.   Also that defendant, "merely for appearances," thereby intended to deceive the public officer by covering up the excess loan to the corporation, and that in order to do so he meant to help swell the portfolio of the bank with a fictitious or spurious note that was never to be enforced, it having been executed and placed there solely for the purposes of deception.

Plaintiff denies defendant's plea and says that the alleged separate agreement is in violation of law and

opposed to public policy. The evidence further shows that the State Bank Commissioner was in fact deceived.

The trial court held that Emberton had no power or authority to bind the bank by a separate agreement that the note would not be enforced and that defendant knew or should have known this. We must agree with this conclusion. We cannot concede that such a plea as that interposed by defendant would be good in any jurisdiction, but if there be a doubt, we purpose to dispel it here. The State Bank Commissioner is a public officer, charged by law and obligated by his oath of office, as well as by considerations of honest dealing with the banking public, to protect their rights. A defense that a note sued upon was given to deceive him is contrary to law and sound public policy. No relief based upon such a plea can be granted to any litigant.

In *German American State Bank v. Watson,* 99 Kans. 686, 163 Pac. 637, it is said: ''By the weight of authority an executive officer of a bank has no implied authority to bind it by a promise that one who signs a note shall not be required to pay it. The cases on the subject are collected in a note in 28 L. R. A. (N. S.) 501, where it is said: 'It is a general rule recognized by the great majority of the cases, that the president or cashier or any other similar executive officer of a bank has no authority, simply by virtue of his office, to bind his bank by an agreement, made with the maker or indorsers of commercial paper payable to the bank, that their liability on such paper will not be enforced. The rule applies whether the agreement is made before the paper has been signed, or after.' ''

To same effect: Michie on Banks and Banking, section 102, page 706; 3 R. C. L. section 69, page 442. Many other authorities are reviewed in *German American State Bank v. Watson, supra.*

Defendant cites cases permitting recovery by receivers of national banks on the ground that the receiver repre-

sents the creditors of the bank, and holding that as such representative, he can collect for such creditors. From this counsel for defendant argues that after a receivership a recovery may be permissible for the creditors, but not before, because he says that before a receiver has taken charge, it is the bank and not the creditors whose rights are involved. But the receivership cases are not in point, for there is no question involved here as to the rights of a receiver. Such cases cannot be taken as precedents in this matter, especially as to the obiter discussions therein as to what rule would apply if the court had another case to decide, i. e., one like this, concerning a state bank, where there is not and never can be a receiver appointed.

If logically followed out, defendant's argument, by reductio ad absurdum, means that it is proper to lock the stable after the horse has been stolen, but not before. This naturally follows, for if the looting must be permitted to continue until a receivership or liquidation, by that time there may be nothing left for the receiver to take over, except possibly the secondhand bank fixtures, if that much, the other assets of the bank having been previously dissipated, leaving nothing but an empty shell for the creditors. Their security, honest assets, are jeopardized at once when the wrong is committed. In either of the cases supposed, before or after the receivership, the actual fraud has been committed or debt incurred before the appointment of the receiver; they date from the time of such commission or occurrence and not from the date of such appointment.

The receivership theory meets with another obstacle in the fact that there can be no such thing as a receivership of a state bank in Colorado: "No receiver shall be appointed for any bank. No bank shall make an assignment for the benefit of creditors." C. L. 1921, § 2729.

We cannot give regard to the argument of defendant that leads to the conclusion that there must be a receiver-

ship before such a suit as this is brought. It is answered by the above statute. We do not take the provisions of this act to mean that an action shall be postponed or defeated because of this fact, and in this case the bank properly brought suit on the note, without waiting for the bank commissioner to act. It is to the credit of the other officers and directors of plaintiff bank that it can be said from the record that they did not know of, nor did they participate in the memorandum signed personally by Emberton, neither did they ratify nor approve of it.

The case at bar does not come under the authorities to the effect that when two parties are equally guilty, the law will leave them where it finds them and give relief to neither. In this case the note that its maker claims is fictitious and given only for appearances, was owned and possessed by the bank when the suit was brought, executed upon a valuable consideration, counted among its genuine assets, necessarily incorporated in sworn reports to the State Bank Commissioner and so intended to be, and in publishing the sworn statement required by law to be made in the public press, it had to be proclaimed as genuine. It is the duty of the officers of the bank to conduct its affairs honestly, and neither the creditors nor honest stockholders of the bank, the latter with their double statutory liability, should be mulcted by a secret illegal agreement by a bank officer. If such agreement be considered from the standpoint of an act of the official intending to so represent the bank, it is beyond the scope of his authority. If it be regarded in the light of an attempted corporate act of the bank itself, it is ultra vires, and a bold assault upon our state banking law, as well as an attempt to thrust aside both the letter and spirit of its provisions. The law in question is not one of the kind that is sometimes passed to meet certain conditions, that a party for whose benefit it is made may or may not choose to invoke and rely

upon. It is a law that all must observe, that was enacted for the benefit of banks, but more especially for the protection of others, the public at large. Its infraction is made a criminal offense. There can be no waiver of such a law.

One further citation from our state banking law is sufficient: "The state bank commissioner shall, at least twice each year, and as often as he deems advisable, carefully examine all the books, records, papers, assets and liabilities of every kind and character owned by or relating to every bank, and shall keep himself fully informed as to the financial condition and business methods thereof, and shall make and file in his office a correct report in detail disclosing the results of such examination." C. L. 1921, § 2717.

The above is only one of many provisions of the law that would be defeated by giving countenance to the secret memorandum that neither the State Bank Commissioner nor any officer of the bank except Emberton knew of when the bank took the Rogers personal note.

Counsel for defendant argue that the bank cannot plead its own fraud, but there was no such plea upon behalf of the bank. The complaint contained the ordinary averments in a suit upon a promissory note. The note is deemed prima facie to have been issued for a valuable consideration. C. L. 1921, § 3841. In order to overcome this presumption, defendant pleaded an illegal contract. The plea was not good.

In *German American State Bank v. Watson, supra,* it is further said: "The rule that an agreement in contravention of a statute, or of public policy, will not be enforced at the instance of either party, does not apply. The statute limiting the amount a bank may lend to one person operates for the protection of the stockholders and the public, as well as the depositors. It is the agreement that the defendant was not to be liable on the note, rather than the making of the note itself, that is objec-

tionable as defeating the purposes of the banking act. The defendant, not the plaintiff, invokes it. To give effect to an understanding that a note executed to show compliance with the law should not be collected, would be to countenance, rather than repudiate, the arrangement for evading the statute, and would tend to defeat its object and to injure the persons for whose benefit it was enacted. In that situation the rule referred to has no application.''

2. As to the defense that there was no consideration for the execution of Rogers' personal note: It was given to reduce the excess loan to the Rogers Farming and Live Stock Company and did so reduce it. This was a valid consideration for the note sued upon. *German American State Bank v. Watson, supra;* 8 C. J. p. 214.

3. Defendant's plea of payment is based upon the claim that after the events related took place, the corporation mentioned gave the bank a new note. Counsel for defendant contend that it was given in discharge of defendant's personal note, but we must accept the conclusion of the trial court that this version is incorrect. The Rogers personal note was in the possession of the bank at the time that the suit was commenced, was a part of its assets and was due and unpaid. There is discussion in the briefs as to one of the notes last mentioned having been collateral to the other, which we regard as immaterial. It was the duty of the bank to collect the debt, and it had the right to sue upon the note, whether it was collateral or not. 16 Ency. Pl. and Pr. pp. 639, 640.

We find no error in the record to the prejudice of the defendant. The judgment will therefore be affirmed.