## TAKIZO MOTONAGA *v.* TOKUMATSU ISHIMARU.

### No. 2668.

SUBMITTED JUNE 7, 1948.                    DECIDED JULY 2, 1948.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

The plaintiff brought ejectment against the defendant for restitution of a one-half portion of a leasehold. After trial, jury waived, the trial judge rendered decision in favor of the plaintiff and entered judgment accordingly for possession and damages.

Aside from painstakingly attacking various reasons for restitution advanced by the trial judge in his decision and findings made therein, the assignment of errors presents but one paramount question, the answer to which is decisive of the appeal. That question challenges the sufficiency of the evidence to support the judgment and is whether or not the trial judge erred in adjudging that the plaintiff is entitled to restitution.

At this juncture it is pertinent to note that, upon the record, this court deems an equitable defense to have been properly invoked, irrespective of the fact that it was not formally pleaded, the defendant having filed, by way of defense, an amended answer alleging sufficient facts and circumstances upon which the defense may be fairly rested. That this was the theory below is indicated by the brief of the plaintiff, if not by that of the defendant, which concedes that the trial judge assumed "the existence of equitable estoppel" as between the lessee and the defendant's predecessor in actual possession. Consonant thereto, the plaintiff argues before this court that the "Defendant has failed to prove all the elements necessary to give rise

160

to an equitable estoppel." Further, the efficacy of the appeal depends squarely upon whether an equitable defense has been sustained, it being the only bar under the evidence to the plaintiff's assertion of right to possession. The duty of this court, therefore, is to consider the question presented in the light of that defense, the overruling of which being the underlying error to which the question, by necessary implication, is directed. So considered, the question is one of law to be decided upon the undisputed evidence and the reasonable inferences to be drawn therefrom.

The lessee obtained the leasehold from the lessor for a term of twenty-five years. Knowing that a certain religious organization desired a location upon which to erect a temple and priest house, the lessee immediately invited it, for that purpose, to enter upon a one-half portion of the leasehold. As an inducement, the lessee called attention to the length of her lease and, in effect, promised that should her invitation be accepted she would not assert her right to possession under the lease for its full term provided that the portion's lease rental and taxes were paid as the sole limitation or condition. The association accepted the lessee's invitation. It relied upon her promise by (1) entering into possession, (2) forming itself into an eleemosynary corporation, hereinafter designated as the "shrine," so as to effectuate the purpose implicit in its acceptance of the invitation, (3) erecting the temple and priest house, which are permanent and valuable buildings, and (4) expending substantial sums of money in the erection thereof, all of which the lessee not only permitted but encouraged and assisted in as an active member of the association and of the shrine.

The shrine, after being in possession for some eighteen years, voluntarily dissolved itself as a corporation, whereupon the shrine's president was appointed trustee. He

now presumably holds the office of trustee and stands undischarged therefrom, there being nothing to the contrary in the record. The dissolution was precipitated by the written suggestion of the foreign funds control. It followed the cessation of the shrine's religious activities upon the outbreak of war, when some of its officers and members and its priest were interned as enemy aliens. Shortly after the priest's internment and approximately two years before dissolution, the shrine expressly permitted the defendant to enter into possession without limitation of time. It required him to care for the premises and pay the lease rental and taxes but reserved no rental for itself. Pursuant thereto, the defendant entered into possession and has stayed therein ever since. His possession, having been permissive before dissolution, is impliedly so thereafter, the trustee, as the shrine's successor and privy in law, doing nothing to indicate the contrary. As a matter of law and fact, the permissive possession of the defendant, therefore, constitutes a tenancy at will which has endured up to the present time, none of the parties thereto having terminated it. The lease rental and taxes were paid to the lessee from the time of the association's entry until one year after the trustee had filed a report with the territorial treasurer, when the lessee refused to accept further payments from the defendant. The plaintiff, on becoming assignee of the lease, persisted in such refusal, the defendant at all times standing ready and willing to pay. One month before she refused to accept such payments, the lessee, for a valuable consideration, executed a written assignment of her lease to the plaintiff upon the written consent of the lessor. The plaintiff thereupon sought the defendant's ouster and instituted the instant ejectment against him.

This court is of the opinion that the undisputed evidence establishes not one but two distinct grounds of equi-

table defense to the plaintiff's otherwise good title. Both grounds are doctrines which are recognized by courts of law within the more comprehensive doctrine of equitable estoppel. One is the doctrine of part performance and the other the kindred doctrine of promissory estoppel. The ground of part performance, however, was not urged as such, either below or on appeal. But incidents thereof were argued and are in controversy. They will be considered briefly. Clearly, the invitation and promise of the lessee, as acted upon by the shrine with the lessee's assistance, constituted a partially performed oral assignment of the one-half portion of the leasehold which equity would enforce because a refusal to do so would amount to a fraud in the light of the substantial performance of the shrine, made pursuant to the assignment. (See *Neale* v. *Neales,* 9 Wall. 1; *Riggles* v. *Erney,* 154 U. S. 244; *Whitney* v. *Hay,* 181 U. S. 77; *Vierra* v. *Shipman,* 26 Haw. 369.) There thus was created in the shrine an estate or interest of corresponding dignity to that which the lessee had acquired from the lessor. On dissolution, such estate or interest survived to the trustee as the shrine's successor and privy in law. This refutes the plaintiff's argument that the shrine obtained a mere parol license, revocable at the lessee's pleasure, which terminated when the shrine ceased to exist as a corporation. The defendant argues that the shrine assigned its estate or interest to him but this court takes the view of the trial judge that there is no credible evidence to that effect, the only right acquired by the defendant being that of permissive occupancy as far as either the shrine or trustee is concerned.

The establishment of the ground of promissory estoppel will be considered further. The plaintiff contends generally that no equitable defense was proved and points out that the lessee made no representation or concealment of material facts which were not known to the shrine at

the time it acted upon her invitation and promise. He argues therefrom that the shrine in an ejectment action by the lessee would have had no equitable defense and cites the general rule that in order to furnish the basis of equitable estoppel a representation must be made to some present or past fact or state of things, the truth of which is unknown to the party who may claim the estoppel's benefit. But such requirements do not pertain to the situations to which the doctrine of promissory estoppel applies, the doctrine being a widely recognized qualification of the general rule. (See *Vogel* v. *Shaw*, 42 Wyo. 333, 294 Pac. 687; *Fried* v. *Fisher, et al.*, 328 Pa. 497, 196 Atl. 39, 115 A. L. R. 147; *Harris* v. *Brown*, 202 Pa. 16, 51 Atl. 586; *Langer* v. *Superior Steel Corp.*, 105 Pa. Super. Ct. 579, 161 Atl. 571; 3 Pom. Eq. Jur., 5th ed., § 808b, p. 211; Restatement, Contracts § 90 [1932].)

Equity has long afforded relief to one who has incurred substantial detriment on the faith of another's promise. The leading case upon such proposition as an equitable defense is that of *Fried* v. *Fisher, et al., supra,* which holds that a promissory estoppel may arise as an application of the general principle of equitable estoppel to certain situations where a promise has been made, even though without consideration, if it was intended that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice. It quotes with approval the instructive statement made in the case of *Faxon* v. *Faxon,* 28 Mich. 159, 161, that "There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be

seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect." (See *Goo Kim* v. *Holt,* 10 Haw. 653.)

The intervening facts and circumstances in the present case constitute a situation to which promissory estoppel peculiarly applies because they involve a promise by the lessee, intended to be relied on, that she would not assert her right to possession under the lease for its full term and a reliance thereon in good faith by the shrine to the extent that it expended large sums of money in erecting valuable and permanent buildings. All the concomitants of the doctrine of promissory estoppel and all the safeguarding features thrown around the doctrine to prevent its too loose application are here present. This is demonstrated by the operative effect of the promise and by the circumstances of the case. The promise operated both as a relinquishment of an existing right and as an instigation of action of a definite and substantial character. The circumstances were such that extreme injustice could have been avoided only by the enforcement of the promise had an attempt been made to break it. Indeed, it would be difficult to conceive of a stronger situation upon which to rest the doctrine where, as here, the situation itself was not only invited by the lessee but actually created with her assistance. Operating as it would have to estop the lessee from dispossessing the shrine at any time during the term of the lease, the doctrine of promissory estoppel extends to the plaintiff who, after the estoppel arose, became the lessee's assign for the balance of the term and now is her privy in estate. It prevents him from ousting the defendant who claims under and holds possession subordinate to the trustee, the shrine's successor and privy in law. It thus operates as an equitable defense to defeat the plaintiff's recovery. The defense having been established by the undisputed evidence, the trial judge erred in

overruling it.

A great deal has been said in the briefs concerning alleged errors in the reasons and findings of the trial judge that the shrine's failure to claim, on dissolution, any interest in the one-half portion and the trustee's failure to assume and deal with the actual possession thereof as a corporate asset constituted a surrender or abandonment. But none of the prerequisites of surrender or abandonment are present in this case. It may well be true that the shrine and trustee fell short in doing what they should have done on dissolution but their inaction is the antithesis of the intelligent action and overt acts which underlie surrender and abandonment. Furthermore, the existence of either surrender or abandonment would be incompatible with and precluded by the continuing legal effect of the defendant's tenancy which had its inception under the shrine and now endures under the trustee. There being nothing to the contrary in the record, it is proper to assume that the failures amounted to nothing more than mere oversights, superinduced by the war's effect upon the shrine's officers and members, most of whom were enemy aliens, inclusive of the trustee, who, at the time of dissolution, was its president. Nevertheless, the trustee remains capable of taking appropriate action and subject to being held accountable for not doing so despite his present belief that he has fulfilled all the duties of his trusteeship. Any dereliction of corporate or trust duty in the proceedings of dissolution, however, is not before this court nor does it purport to pass judgment thereon. It is sufficient to say that nothing has been made to appear therein which would in any way affect the subordinate character of the actual possession held by the defendant or detract from the equitable defense which he has to the plaintiff's attempt to dispossess him. Whatever their nature, alleged errors in the trial judge's reasons and

findings need not be considered further, such reasons and findings being employed to reach a result which this court deems to be erroneous.

Judgment reversed and the cause remanded below with instructions to dismiss the petition.

*R. B. Jamieson* for plaintiff in error.

*R. T. Yamaguchi* for defendant in error.