COSMOPOLITAN FINANCIAL CORPORATION, Plaintiff-Appellant *v.* ELROY L. RUNNELS, ELMER D. PHILLIPS, FRANCIS T. DeMELLO and MELVIN P. LEONG, Defendants-Appellees

NO. 6453

MARCH 12, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

34

OPINION OF THE COURT BY HAYASHI, C.J.

Appellant appeals from a judgment entered below finding liability against Appellee Runnels only on a promissory note due appellant.

The paramount issues raised on appeal are (1) whether the trial court erred in admitting testimony concerning contemporaneous statements made to defendants-appellees by the payee corporation's officer to the effect that the promissory notes signed by them would not be enforced against them; and (2) whether indorsers-guarantors of a promissory note payable to a financial institution can be relieved of liability on the instrument by virtue of a contemporaneous parol statement by an officer of the payee corporation that the note would not be enforced against them.

The facts of the case reveal that on February 3, 1972, Appellee Runnels signed a promissory note in the amount of $10,893.12, payable to Appellant Cosmopolitan Financial Corporation (CFC) in six (6) months. A few months after the execution of this note, Runnels was asked by one Bertram Yanagawa, president or manager[1] of CFC, to obtain cosigners for the loan. Runnels at that time was out of work and evidently in some financial difficulty. Runnels testified at trial that Yanagawa proposed not to call in the note but merely wished to keep the loan "alive" in view of Runnels' precarious

---

[1] The lower court found that Yanagawa was "president or manager" of CFC.

financial condition. Runnels then prevailed upon Appellees Phillips, an architect, Leong, a certified public accountant, and DeMello, an attorney, to cosign a renewed note. All four appellees signed as "borrowers" on a note dated May 22, 1972, due November 22, 1972.

Runnels testified that they met at Yanagawa's office and that the appellees were informed by Yanagawa that he needed their signatures on Runnels' note because Runnels did not have a job and that he (Yanagawa) was under some "pressure" to satisfy the state bank examiner. Runnels further testified that Yanagawa assured each cosigner that the bank would not enforce the note against any of them.

The May 22, 1972 note was extended for payment until May 22, 1973. When the extension period was up, a new note due November 22, 1973 was signed by all appellees to refinance the obligation. On this occasion, Runnels signed as borrower and the remaining three appellees signed as "indorsers-guarantors". On February 25, 1974, the note, which is the subject of this suit, was executed. It was due on August 26, 1974. Again Runnels signed as "borrower" and Phillips, Leong and DeMello signed as "indorsers-guarantors". Upon default by the appellees, this action was brought; and after a jury-waived trial, judgment was entered against Appellee Runnels only. On the basis of their uncontradicted testimony that they signed as indorsers-guarantors of the note in reliance on Yanagawa's assurance that the note would not be enforced against them, the trial court held that Phillips, Leong and DeMello were not liable.

CFC contends that the trial court erred in concluding that Yanagawa had "authority to bind the corporation by agreements that obligations due to the corporation represented by negotiable instruments will not be enforced." It argues that "specific authority with respect to such agreements from the corporation must be shown in order to bind it."

The trial court concluded that Yanagawa "was acting as an officer of [CFC], within the general scope of his authority in making an agreement with the [indorsers-guarantors] that they would not have to pay anything should the note be defaulted. . ."

CFC cites a good deal of authority for its contention. *Rogers v. First State Bank of Aguilar*, Colo., 243 P. 637 (1926), says it best:

If such agreement be considered from the standpoint of an

act of the official intending to so represent the bank, it is beyond the scope of his authority. If it be regarded in the light of an attempted corporate act of the bank itself, it is ultra vires, and a bold assault upon our state banking law, as well as an attempt to thrust aside both the letter and spirit of its provisions.

*Id.* at 640.

*Rogers* suggests a rule that if it is good for the financial institution, it is authorized, but if it is bad for the financial institution, it is not authorized. We disagree.

We think the proper rule of law is otherwise.

The fundamental and well-settled rule is that when, in the usual course of the business of a corporation, an officer or other agent is held out by the corporation or has been permitted to act for it or manage its affairs in such a way as to justify third persons who deal with him in inferring or assuming that he is doing an act or making a contract within the scope of his authority, the corporation is bound thereby, even though such officer or agent has not the actual authority from the corporation to do such an act or make such a contract. This authority is known as apparent or ostensible authority. This apparent authority is materially the same and is based upon the same principles as authority by estoppel. Stating the rule in terms of estoppel, a corporation which, by its voluntary act, places an officer or agent in such a position or situation that persons of ordinary prudence, conversant with business usages and the nature of the particular business, are justified in assuming that he has authority to perform the act in question and deal with him upon that assumption, is estopped as against such persons from denying the officer's or agent's authority.

19 AM JUR 2d, *Corporations* § 1164 at 590-591 (footnotes omitted).

Case law in Hawaii has recognized the concept of apparent or ostensible authority. *Kyles v. Lantis,* 39 Haw. 440 (1952); *Scott v. Hawaiian Tobacco Plantation, Limited,* 21 Haw. 493 (1913).

Case law in Hawaii has also recognized the concept of promissory estoppel. *Motonaga v. Ishimaru,* 38 Haw. 158 (1948); *Fred v. Pacific Indemnity Company,* 53 Haw. 384, 494 P.2d 783 (1972).

Equitable estoppel is a device originating in courts of equity and, as such, depends on a close analysis of individual fact situations for its application. *Filipo v. Chang,* 62 Haw. 626, 618 P.2d 295 (1980).

In this case we have a situation where the corporation president or manager induced three individuals to become indorsers-guarantors by committing to them that they would not be required to pay should the note be defaulted. Under those facts CFC cannot prevail. If Yanagawa was not authorized to offer the inducement, then he was also not authorized to obtain the result of the inducement. If CFC wishes to enjoy the fruit of Yanagawa's inducement, it cannot escape liability for the inducement.

> Equity has long afforded relief to one who has incurred substantial detriment on the faith of another's promise . . . [A] promissory estoppel may arise as an application of the general principle of equitable estoppel to certain situations where a promise has been made, even though without consideration, if it was intended that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice.

*Motonaga, supra,* at 163.

In our view, the facts clearly indicate that Yanagawa had apparent or ostensible authority to do what he did.

Appellant further argues that the testimony admitted concerning the transaction between Yanagawa and the appellees was barred by the parol evidence rule. We disagree.

The parol evidence rule is invoked to bar the testimony of prior contemporaneous negotiations and agreements that vary or alter the terms of a written instrument. The rule is one of substantive law setting forth the well-settled principle that an agreement reduced to writing serves to integrate all prior agreements and negotiations concerning the transaction into the written instrument which then represents the final and complete agreement of the parties. The rule then bars evidence of collateral agreements that would vary or alter the written terms and is called into play where the issue involves the rights and duties created by the instrument. As a rule of substantive law, it determines the parties' legally enforceable contractual obligations and precludes consideration of extrinsic evidence to the contrary. *Akamine & Sons v. American Security Bank,* 50 Haw. 304, 440 P.2d 262 (1968); *Midkiff v. Castle & Cooke, Inc.,* 45 Haw. 409, 368 P.2d 887 (1962).

Historically, in an action to determine the parties' contractual rights under an agreement, the court's only inquiry would center around whether the written agreement was a total integration of the parties' intent. If so, absent evidence of mistake or fraud, the rule barred introduction of *any* extrinsic evidence that varied or altered the terms.[2] *See 4 Williston Contracts* § 633 (1961). However, since the advent of the adoption of the Uniform Commercial Code (U.C.C.) in practically every state, rigid adherence to the exclusionary effects of the parol evidence rule has seen a relaxation of its application by the courts in many jurisdictions. This has been largely attributed to a combination of the U.C.C.'s intent to facilitate the flow in business and commercial transactions, and the widespread use of standard business forms to evidence the existence of contractual relationships between parties. For example, article 2 of the U.C.C. permits the court to consider a far wider range of extrinsic evidence to discern the intent of the parties than has been permitted under contract law.[3] Article 3 does not appear to expressly provide for the use of extrinsic evidence in as liberal a fashion as article 2,[4] but we think that expansion of the liberal approach toward the receipt of extrinsic evidence, in the face of the proliferation of standard form contracts and commercial paper, gives the courts a wider insight into the real intent of the parties. *See, e.g., Hunt Foods, Inc. v. Doliner,* 26 App. Div.

---

[2] Wallach, *The Declining "Sanctity" of Written Contracts – Impact of the Uniform Commercial Code on the Parol Evidence Rule,* 44 MO. L. REV. 651 (1979).

[3] Hrs § 490:2-202 provides that:

Final written expression: parol or extrinsic evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) By course of dealing or usage of trade (section 490:1-205) or by course of performance (section 490:2-208); and

(b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

[4] The comment to HRS § 490:3-119 notes that article 3 of the Uniform Commercial Code — Commercial Paper "does not attempt to state general rules as to when an instrument may be varied or affected by parol evidence,. . . ."

2d 41, 270 N.Y.S.2d 937 (1966). *Zwierzycki v. Owens,* 499 P.2d 996 (1972); *General Equipment Manufacturers v. Bible Press, Inc.,* 10 Mich. App. 676, 160 N.W.2d 370 (1968); *Golden Gate Corporation v. Barrington College,* 98 R.I. 35, 199 A.2d 586 (1964).

The record in this case indicates that Judge Lanham, in his refusal to bar evidence of the circumstances surrounding the transaction, was applying this modern principle over the plaintiff's parol evidence objection. This is the same view adopted in Professor Jordan's article:

> As between immediate parties, however, all evidence, whether written or oral, whether of conditions precedent or subsequent, should be admitted to determine what the parties understood the true contractual relationship to be. Any inherent improbability, such as a contradiction between what allegedly was agreed upon and what was signed will naturally affect the weight to be accorded such evidence, but procedural wrangles can be avoided by allowing the fact finder to hear all the evidence which either party wishes to bring to bear. . . .

13 GA. L. REV. 95 (1978).

On the basis of the testimony given, including evidence of the oral agreement and the surrounding circumstances, Judge Lanham found sufficient evidence to conclude that the real intent of the parties was not to make a binding legal agreement at all. Looking at the entire guarantee agreement and the totality of the circumstances, he, instead, found an intent to deceive the state bank examiner.

We have previously adopted the ruling that a statement or claim or document is fraudulent if it is falsely made, or caused to be made, with the intent to deceive. *Kawaihae v. Hawaiian Insurance Companies,* 1 Haw. App. 355, 619 P.2d 1086 (1980). The evidence presented in the case before us meets that standard.

Finding of Fact No. II:

> II. That the instrument in question was established by Mr. Yanagawa and Defendants to avoid the negative scrutiny of the State Bank Examiner as well as to assist defendant's [sic] Runnels.

Where the evidence indicates that the parties' intent was to commit a fraud, the RESTATEMENT (SECOND) OF CONTRACTS § 240, at 36, (Tent. Draft No. 6, 1971) has this to say:

§ 240.  EVIDENCE OF PRIOR OR CONTEMPORANEOUS AGREEMENTS AND NEGOTIATIONS.

Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish ***

(d) illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause;***

*Comment:*

\*  \*  \*

*c. Invalidating cause.*  What appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration,. . . . Such invalidating causes need not and commonly do not appear on the face of the writing.

Therefore, we hold that the oral agreement relieving the guarantors of liability on the note had the effect of invalidating the entire agreement, as it appeared to have been conceived in fraud. Therefore, the parol evidence rule was inapplicable.

CFC further contends that considerations of public policy and estoppel operate to eliminate the defense by the indorsers-guarantors of a promissory note that they were induced to sign by CFC's representation that they would not be called upon to satisfy their indorsements-guarantees. We disagree.

The issue is whether only the oral agreement or the entire transaction is invalid.

Certainly there is much precedent for the proposition that only the oral agreement is void. *See annot.,* 64 A.L.R. 595. The basis for this view is well-stated in *First National Bank of Tulsa v. J. D. Boxley,* 129 Okla. 159, 264 P. 184, 187, 64 A.L.R. 589, 593-594 (1927):

The public is greatly interested in the management, control and regulation of the banking business. Banks are permitted to do business through the courtesy and permission of law and subject. to its provisions for the protection of the depositors, creditors, and stockholders. Public faith and credit and honesty in business transactions are the main assets of a bank. To sanction any arrangements whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities would tend to defeat the entire purpose

of the regulatory statutes. Parties may not participate in a transaction the object of which is to give to the assets of a bank a favorable appearance for the purposes of examination, but less favorable for the purposes of liability or enforcement. The defendant having signed said note, and it being a part of the bank's assets, an understanding or agreement of nonliability would be neither proper nor tenable. It would amount to a fraud upon the depositors, stockholders, and the public to permit an agreement that the obligation which the defendant assumed was in fact not an obligation. We must conclude that under defendant's allegations the note sued on became a part of the assets of the bank and the allegations of the agreement just considered did not constitute a defense to the plaintiff's cause of action.

There are advocates on the other side. Professor Jordan cites the problem Georgia courts have been having in such cases and points out:

> Four almost identical cases in one state in two years, however, provide strong indication that even businessmen are inclined to believe soothing words from too-helpful bankers trying to advance money beyond legal debt limits. If such assurances are truly against public policy, perhaps banks should be more forcefully discouraged from employing them. Banks have much better access to legal counsel than do most borrowers and can exert substantial control over their loan officers to insure that potential obligors fully understand the extent of the risk they are undertaking. No innocent depositor need suffer: if agreements and assurances that the note is only a formality are fraudulent and the bank is denied enforcement, bonding provides a safeguard against the erring loan officer. In sum, the policy against fictitious assets may give a license and incentive to defraud. . . .

13 GA. L. REV. at 78 (footnote omitted).

Appellant cites *Rego v. Bergstrom Music Company, Limited,* 26 Haw. 407 (1922), as additional authority. In that case, Rego sued the music company for entering his home and repossessing a piano. The music company established that it had sold the piano to Silva via a conditional sales contract of which Silva was in breach. Rego then was allowed to introduce evidence that with the music company's approval and consent, Silva held a raffle of the piano; that Rego was the

winner; that the music company received some of the proceeds of the raffle; and that it authorized Silva to deliver the piano to Rego. The jury found in favor of Rego. Our supreme court ordered a new trial holding that the evidence of the raffle should not have been admitted on the grounds that raffles were illegal and that neither a plaintiff nor a defendant may found his case, either in whole or in part, upon an illegal transaction, although his antagonist may have participated therein.

We view *Rego* as an application of the general principle that the law will leave the parties to an illegal bargain where it finds them and will grant no remedy to either party. *See Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 551 P.2d 525 (1976). Since this case involves a scheme to defraud the bank examiner, we agree with CFC that it is the kind of situation which calls for application of the principle. We disagree with CFC, however, that the application of the new principle allows CFC to sue on the guarantees while precluding guarantors from defending on the basis of the contemporaneous agreement.

The scheme was the entire guarantee agreement, not just the agreement that it would not be legally binding. Application of the principle that the law will grant no remedy to either party precludes both parties from obtaining judicial assistance to enforce any part of the scheme.

The guarantees being part of the scheme, we hold that CFC may not enforce them.

The judgment is affirmed.

*Joseph M. Gedan (Owen H. Hellekson, Jr.,* on the briefs) for plaintiff-appellant.

*Bernard K. Trask* attorney for defendants-appellees.