MPM HAWAIIAN, INC., dba COLONEL SANDERS KENTUCKY FRIED CHICKEN, Plaintiff-Appellant, *v.* WORLD SQUARE, a Limited Partnership, RONALD A. BROWN and APCOA, INC., Defendants-Appellees

NO. 8656

(CIVIL NO. 6625)

JULY 7, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This action involves the construction of a lease between defendant World Square, a limited partnership (Landlord), and plaintiff MPM Hawaiian, Inc., a Hawaii corporation, doing business as Colonel Sanders Kentucky Fried Chicken (Tenant). Defendant Ronald A. Brown (Brown) is the general partner of Landlord. Tenant appeals the grant of summary judgment in favor of Landlord and Brown and the denial of its motion for partial summary judgment. We affirm.

By lease dated May 1, 1977 (Lease), Tenant leased from Landlord store space 1345 (Premises) in the World Square shopping center in Kailua-Kona, Hawaii. Thereafter, Tenant opened and operated a restaurant on the Premises. The center includes a vehicular parking area with about 95 parking spaces.

Commencing June 16, 1980, Landlord instituted at the shopping center a parking validation system managed by defendant APCOA, Inc. (APCOA). Under the system, cars parked in the shopping center's parking lot were charged a parking fee of 25¢ for the first half-hour and 50¢ per hour thereafter. All tenants of Landlord could purchase one-half hour validation stickers for 20¢ each and use these parking stickers to validate all or part of their customer's parking. Also, patrons of the shopping center's movie theaters could use the parking lot either from 6:30 p.m. to 9:00 p.m. or from 8:30 p.m. to 11:00 p.m. if they paid 40¢ or presented two validation stickers.

Under the agreement with APCOA, Landlord received from APCOA fifty percent (50%) of its net profits. Landlord refunded such receipts from APCOA to its tenants "based on the number of validations issued by each tenant." I Record at 268.

Tenant commenced action on November 18, 1980 and in its amended complaint alleged the following breaches of the Lease: (1) imposing parking charges on Tenant, its customers and employees; (2) allowing and inviting customers of non-

tenant merchants to park in the parking lot; (3) failing to designate an adequate free parking area for Tenant's employees; (4) failing to designate and provide an adequate loading zone; and (5) imposing a discriminatory parking validation system. Tenant sought injunctive relief, as well as monetary damages.

On February 2, 1981, Landlord and Brown moved for summary judgment against Tenant. On July 13, 1981, Tenant sought partial summary judgment on the sole ground that the system of validated parking was a material breach of the Lease.

By its orders entered on October 7, 1981, the trial court granted summary judgment in favor of all defendants, including APCOA, and denied Tenant's motion for partial summary judgment.[1] After its motion for reconsideration was denied on January 4, 1982, Tenant appealed.

## I.

Tenant's principal contention is that (1) certain Lease provisions are ambiguous; (2) parol or extrinsic evidence of the parties' intent should be considered to resolve the ambiguity; (3) the affidavits and depositions in the record viewed in the light most favorable to Tenant raise genuine issues of material fact; and (4) thus, the granting of summary judgment was improper. We disagree.

## A.

The principal Lease provision in dispute is article 11C entitled "Management of Common Area" which reads:

The Common Area [which includes vehicular parking areas] shall be subject to the exclusive management and

---

[1] The order granting summary judgment filed on October 7, 1981 provides in part:
IT IS HEREBY FURTHER ORDERED that judgment be and is hereby entered for all Defendants in the above-entitled action, and that all claims by Plaintiff herein against Defendants are hereby dismissed with prejudice.
The order thus meets the final judgment requirement of *M.F. Williams, Inc. v. City & County*, 3 Haw. App. 319, 650 P.2d 599 (1982).

control of Landlord. Landlord and the other owners of all or any portion of the Common Area shall have the right, from time to time, to designate, withdraw, redesignate, relocate and limit as Common Areas or commercial areas, such areas as Landlord or such other owner shall at any time select within their respective parcels, whether or not the same reduces the number of parking stalls, open space, landscaping or other areas. Landlord shall have the right to establish, promulgate and enforce such reasonable rules and regulations concerning the Common Area as it may deem necessary or advisable for the proper and efficient management, operation, maintenance and use thereof, and Tenant shall comply with the same. *Landlord may, if in its opinion the same be advisable, establish a system or systems of validation or other type operation, including a system of charges against non-validated parking checks of users,* and Tenant agrees to conform to and abide by all such rules and regulation [sic] in its use and the use of its customers and patrons with respect to said automobile parking area; provided however, that all such rules and regulations and *such types of operation or validation of parking checks* and other matters affecting the customers and patrons of Tenant *shall apply equally and without discrimination to all persons entitled to the use of said automobile parking facilities.* [Emphasis added.]

We start with the basic precept that "the construction and the legal effect to be given a contract is a question of law to be decided by the court." *Reed & Martin, Inc. v. City & County,* 50 Haw. 347, 348-49, 440 P.2d 526, 527 (1968). *See also Clarkin v. Reimann,* 2 Haw. App. 618, 638 P.2d 857 (1981). In rendering summary judgment in favor of defendants, the trial court did construe and give legal effect to the Lease.

At the outset, we note that the Lease contains an integration clause. Article 44 expressly provides that the Lease "constitutes the entire agreement of Landlord and Tenant and supersedes all oral and written agreements and understandings made and entered into by the parties hereto prior to the date hereof."

In dealing with an integrated document, in "the absence of fraud, duress, mutual mistake, or ambiguity, the parol evi-

dence rule requires the exclusion of extrinsic evidence, oral or written." *Industrial Indemnity Co. v. Aetna Casualty & Surety Co.,* 465 F.2d 934, 937 (9th Cir. 1972). In *Akamine & Sons, Ltd. v. American Security Bank,* 50 Haw. 304, 310, 440 P.2d 262, 266 (1968), our supreme court stated:

> Once the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it.

Inasmuch as Tenant does not claim any fraud, duress or mutual mistake, the pivotal question is whether article 11C of the Lease is ambiguous. If it is, "parol evidence is admissible to explain the circumstances surrounding the execution" of the Lease "to lend the trial judge insight into the meaning" of the Lease provisions. *Hokama v. Relinc Corp.,* 57 Haw. 470, 474, 559 P.2d 279, 282 (1977). *See also Graham v. Washington University,* 58 Haw. 370, 569 P.2d 896 (1977). However, if there is no ambiguity, the parol evidence rule applies. *Midkiff v. Castle & Cooke, Inc.,* 45 Haw. 409, 368 P.2d 887 (1962).

It is difficult to determine from the transcripts of the proceedings of September 11 and December 8, 1981 on what ground the trial court granted Landlord's and Brown's motion for summary judgment and denied Tenant's motion for partial summary judgment. The Order Granting Summary Judgment provides that "there exists no genuine issue as to material facts, and that as a matter of law," Landlord and Brown are entitled to a judgment. II Record at 8-9. In the Order Denying Partial Summary Judgment, the trial court states that "there exists genuine issues as to material facts, and that as a matter of law," Tenant is not entitled to judgment. II Record at 10-11. The orders are contradictory since the resolution of the motions involves the construction of the same Lease. Thus, it is unclear whether the trial court made any determination concerning the alleged ambiguity of the Lease provisions.

The determination of whether a contract is ambiguous is a question of law. *See United States, ex rel. Union Building Materials Corp. v. Haas & Haynie Corp.,* 577 F.2d 568 (9th Cir. 1978). A finding of ambiguity or unambiguity ·is freely reviewable and an appellate court may make its own finding on

such issue. *See Haas & Haynie Corp., supra; Graham, supra; Hokama, supra.* Ambiguity exists when there is a doubt as to the meaning of written words. *Government Employees Insurance Co. v. Franklin,* 66 Haw. ___ (No. 8696, May 6, 1983).

We have carefully reviewed the Lease and find that article 11C and other pertinent provisions are unambiguous. Therefore, the parol evidence rule is applicable and "extrinsic evidence of the surrounding facts and circumstances existing prior to, contemporaneously with and subsequent to the execution" of the Lease cannot be considered for the purpose, here, of determining the existence of an issue of fact. *Midkiff,* 45 Haw. at 422, 368 P.2d at 894.

We read article 11C to grant to Landlord "the exclusive management and control" of the parking area. It clearly gives Landlord the authority to "establish a system or systems of validation or other type operation" for the parking area "if in its opinion the same be advisable." The authority is unlimited as to the type of parking system, *e.g.,* "validation" or other system, and it may be instituted *in futuro,* whenever in the opinion of Landlord it was advisable. We find no ambiguity in the word "validation." Tenant argues that the clause "including a system of charges against non-validated parking checks of users" creates an ambiguity since it may mean that imposition of charges on Tenant's customers with validated parking checks is precluded. This argument is specious since the "including" clause is not a limitation on the general grant of authority to establish a system of parking operation. Article 11C authorized Landlord to institute the parking validation system through APCOA as its agent. Furthermore, neither article 11C nor other Lease provisions prohibit Landlord from allowing customers of non-tenant merchants to park in the parking area.

We find nothing in the Lease requiring Landlord to designate an adequate free parking area for Tenant's employees. In fact, article 11E expressly provides that, "Landlord shall have the right to make changes in the Common Area and any part thereof including, without limitation, . . . the exclusion of employee parking therefrom as Landlord may deem necessary and advisable for the proper and efficient operation and maintenance of the Common Area." We also find nothing in the

Lease requiring Landlord to designate and provide Tenant with an adequate loading zone. Thus, there are no ambiguities in the Lease concerning these matters.

Article 11C requires that the parking system based on validation of parking checks or otherwise "shall apply equally and without discrimination to all persons entitled to the use of said automobile parking facilities." Tenant claims that there is a genuine issue of material fact as to whether there was discrimination in APCOA's cheaper parking charges imposed on theater patrons. It is undisputed that APCOA charged theater patrons lower than the normal rates from 6:30 p.m. to 9:00 p.m. or from 8:30 p.m. to 11:00 p.m. However, Tenant was offered the same validation privileges after 6:30 p.m. Thus, the record reveals no genuine issue of material fact nor discrimination concerning this matter.

In sum, we hold that (1) the Lease is an integrated document, (2) its provisions are not ambiguous, (3) extrinsic evidence concerning intent of the parties in executing the Lease is excludable, (4) there is no genuine issue of any material fact, and (5) Landlord and Brown are entitled to summary judgment as a matter of law.

**B.**

In *Association of Apt. Owners v. Walker-Moody Construction Co., Ltd.,* 2 Haw. App. 285, 630 P.2d 652 (1981), this court applied the Uniform Commercial Code's parol or extrinsic evidence rule, Hawaii Revised Statutes § 490:2-202 (1976) (hereinafter UCC § 2-202),[2] to a settlement agreement in dis-

---

[2] Hawaii Revised Statutes § 490:2-202 (1976) reads:

Final written expression: parol or extrinsic evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

    (a) By course of dealing or usage of trade (section 490:1-205) or by course of performance (section 490:2-208); and

pute although it was not specifically under its coverage. Likewise, in *Hawaii Leasing v. Klein,* 4 Haw. App. 1, 658 P.2d 343 (1983), we applied UCC § 2-202 to an equipment lease agreement.

Even if we apply UCC § 2-202 to the Lease in this case, the same result is reached. The rule precludes the consideration of the parol or extrinsic evidence.

In addition to the express integration clause in article 44 of the Lease, the uncontradicted evidence in the record is that there were intense negotiations for a period of seven months between Brown and Ken Michael, president of Tenant, who was represented by counsel Reuben S.F. Wong, and such negotiations resulted in deletions of various provisions in the Lease and amendments and additional conditions consisting of six double-spaced typewritten legal size pages designated as Exhibit "C" attached to the Lease. Under such circumstances, there is no question that the Lease was intended "as a complete and exclusive statement of the terms of the agreement" and any parol or extrinsic evidence is barred. *See* comment 3 to UCC § 2-202; G. Wallach, *The Declining "Sanctity" of Written Contracts — Impact of the Uniform Commercial Code on the Parol Evidence Rule,* 44 Mo. L. Rev. 651 (1979). *Cf. Cosmopolitan Financial Corp. v. Runnels,* 2 Haw. App. 33, 625 P.2d 390 (1981).

## II.

Tenant claims that (1) the Lease grants to Tenant and its customers the right to use the parking lot and all areas of entrance and egress; (2) the "leasing" of the parking lot by Landlord to APCOA was a material breach of the Lease as a matter of law; and (3) therefore, the trial court erred in denying Tenant's motion for partial summary judgment. We do not agree.

---

(b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Article 11A(1) of the Lease defines "Common Area" to include "vehicular parking areas" and states that "[a]nything herein contained to the contrary notwithstanding, it is understood and agreed that the Common Area shall not in any event be deemed to be a portion of or included with the Demised Premises leased hereunder." In article 11B, Landlord "grants" to Tenant, its customers and employees "the non-exclusive right, in common with others duly authorized by Landlord, to use the Common Area and the various portions thereof, respectively, for the uses and purposes designated therefor from time to time by Landlord." Then, as indicated above, article 11C subjects the "Common Area" to the "exclusive management and control of Landlord" and empowers Landlord to "establish a system or systems of validation or other type operation" for the parking area.

Tenant argues that the agreement dated May 15, 1980 between Landlord and APCOA (APCOA Agreement) legally divested Tenant, its customers and employees of the "right" to use the parking lot. Tenant unduly relies on the fact that the APCOA Agreement is labeled "lease agreement" and the legal consequences flowing from a "lease." The substance of the APCOA Agreement, not its label, is crucial to us. Cf. Dang v. F and S Land Development Corp., 62 Haw. 583, 618 P.2d 276 (1980); Kawauchi v. Tabata, 49 Haw. 160, 413 P.2d 221 (1966). Nor are we concerned whether the "right" alleged to have been breached is labeled an easement, license or privilege. We view the APCOA Agreement to be a device whereby a parking validation system was established with APCOA as Landlord's agent, all within the purview of the Lease provisions.

As a matter of law, we hold that the APCOA Agreement was not a material breach of the Lease and the trial court properly denied Tenant's motion for partial summary judgment.

Affirmed.

Reuben S.F. Wong (Warren Y. Kunimoto also on the briefs; Law Offices of Reuben S.F. Wong, of counsel) for plaintiff-appellant.

Paul A. Schraff (John R. Dwyer, Jr. also on the brief; Carlsmith & Dwyer, of counsel) for defendants-appellees World Square and Ronald A. Brown.

*Ronald Y.K. Leong* (filed no brief; *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel) for defendant-appellee APCOA, Inc.