Catherine BOSKOFF, Plaintiff,

v.

Thomas YANO, Raymond Duvauchelle, Aaron Kakinami, Duvauchelle & Kakinami, Attorneys at Law, et al., Defendants.

No. CIV. 97–01203ACK.

United States District Court, D. Hawai'i.

Oct. 5, 2001.

Richard L. Rost, Rost & Geiger, Wailuku, HI, for plaintiff.

Raymond Duvauchelle, Koloa, HI, pro se.

Calvin E. Young, Steven L. Goto, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for Aaron Kakinami.

*ORDER DENYING PLAINTIFF'S AND DEFENDANTS KAKINAMI AND DUVAUCHELLE'S WRITTEN STATEMENT OF APPEAL FROM MAGISTRATE JUDGE'S ORDERS (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ORDER ENFORCING THE SETTLEMENT AGREEMENT AND (2) GRANTING DEFENDANT YANO'S MOTION FOR LEAVE TO FILE FIRST AMENDED CROSS-CLAIM*

KAY, District Judge.

## BACKGROUND

This is a legal malpractice action brought by Plaintiff Catherine Boskoff ("Plaintiff") against her former attorney Defendant Thomas Yano ("Defendant Yano") as well as attorneys Defendant Raymond Duvauchelle ("Defendant Duvauchelle"), Defendant Aaron Kakinami ("Defendant Kakinami") and Defendant Duvauchelle and Kakinami's law firm Duvauchelle & Kakinami ("law firm") (collectively "Defendants"). In October of 1991, Plaintiff hired Defendant Yano to represent her in an action brought by the Ana Koa Corporation ("underlying litigation").[1] The underlying litigation arose from a contract dispute between the Ana Koa Corporation and Plaintiff's then estranged husband, Kenneth Boskoff, dba Boskoff Construction. Plaintiff initially sought to hire Defendant Duvauchelle, however, because Duvauchelle's current representation of Kenneth Boskoff, dba Boskoff Construction, created a conflict of interest, Defendant Duvauchelle referred Plaintiff to Defendant Yano. Defendants Duvauchelle and Yano cooperated in the defense of the Boskoffs. On May 28, 1992, default

---

1. This suit, filed in the Fifth Circuit Court of Hawaii, was styled *Ana Koa Corporation v. Catherine Boskoff, et al.,* Civil No. 91–0226.

judgment was entered against Kenneth and Catherine Boskoff, individually and dba Boskoff Construction. *See* Complaint at Ex. F. Defendant Kakinami and Defendant Duvauchelle were law partners at this time.

On September 15, 1997, Plaintiff filed a Complaint against Defendants alleging legal malpractice. Defendant Kakinami filed an Answer to Plaintiff's Complaint and Cross–Claim against Defendants Yano and Duvauchelle on October 20, 1997. On November 24, 1997, Defendant Yano filed an Answer to Plaintiff's Complaint and asserted a Cross–Claim against Defendants Duvauchelle, Kakinami and the law firm for contribution and indemnity, as well as a Counter–Claim against Plaintiff for unpaid legal fees. *See* Defendant Yano's Cross–Claim against Defendants Duvauchellle & Kakinami at 2; Defendant Yano's Counter–Claim Against Plaintiff at 2. Defendant Duvauchelle answered all claims brought against him but did not assert any claims offensively.

Approximately two years after Plaintiff initiated this lawsuit, on September 22, 1999, the parties, including Defendant Yano, stipulated to dismiss with prejudice Plaintiff's claims against Defendants Kakinami, Duvauchelle and the law firm ("Boskoff–Kakinami/Duvauchelle Settlement"). Defendants Kakinami, Duvauchelle and the law firm were to "remain in the case only as Defendants for the purpose of apportionment of liability or damages." *See* Stipulation filed 9/22/99. Under the Boskoff–Kakinami/Duvauchelle Agreement, Plaintiff agreed to defend and indemnify Defendants Kakinami and Duvauchelle. *See* Defendant Kakinami's Opp. to Defendant Yano's Motion to Amend Cross–Claim, Ex. C at ¶ 6.2.

Plaintiff and Defendant Yano reached an apparent settlement on July 5, 2000 ("Boskoff–Yano Settlement"). The correspondence between the parties indicates that Defendant Yano at one point during the negotiations offered to pay Plaintiff $15,000 "to settle the entire case and all claims related thereto." Plaintiff's Motion to Enforce the Settlement Agreement at Ex. 2. However, Plaintiff rejected this offer and Defendant's subsequent offers simply proposed an exchange of $15,000 for Plaintiff's release of her claims. *See id.* at Ex. 7–10. The parties executed a signed settlement agreement on July 5, 2000. Defendant Yano's Opp. to Plaintiff's Motion to Enforce Settlement Agreement at Ex. A. On July 31, 2000, in accordance with the parties' stipulation, this Court issued an Order dismissing with prejudice all of Plaintiff's claims against Defendant Yano. *See* Plaintiff's Motion to Enforce Settlement Agreement at Ex. 11.

Nearly a year later, on June 1, 2001, Defendant Yano filed a Motion for Leave to File First Amended Cross–Claim against Defendants Duvauchelle and Kakinami. Defendant Kakinami filed an Opposition to Defendant Yano's Motion to Amend on June 22, 2001 to which Defendant Duvauchelle joined on June 27, 2001. The following day, June 28, 2001, Plaintiff filed an Opposition to Defendant Yano's Motion to Amend. Defendant Yano replied on July 11, 2001. In an Order dated August 15, 2001, Magistrate Judge Chang granted Defendant Yano's Motion to Amend based on the liberal standard set forth in Federal Rules of Civil Procedure ("F.R.C.P.") Rule 15(a) and on a finding of the absence of undue prejudice, undue delay, bad faith and futility.

While Defendant Yano moved to amend his Cross–Claim, Plaintiff and Defendants Duvauchelle and Kakinami ("Movants") sought enforcement of a specific interpretation of the Boskoff–Yano Settlement Agreement. On June 21, 2001, Plaintiff filed a motion to enforce the settlement agreement seeking an Order dismissing

Defendant Yano's Counter–Claim against Plaintiff and his Cross–Claims against Defendants Duvauchelle, Kakinami and the law firm. Defendant Duvauchelle joined Plaintiff's Motion on June 27 and Defendant Kakinami filed a separate Motion to Enforce the Settlement Agreement two days later on June 29, 2001. On July 9, 2001 Defendant Yano filed an Opposition to which both Plaintiff and Defendant Kakinami replied on July 19, 2001. By Order dated August 15, 2001, Magistrate Judge Chang granted the Motions insofar as they sought a judicial determination that a valid and enforceable written settlement agreement between Plaintiff and Defendant Yano exists. Judge Chang denied the Motions as to any further relief sought by Movants, thereby preserving Defendant Yano's Cross- and Counter–Claims.

On August 23, 2001, Plaintiff filed a timely Written Statement of Appeal pursuant to Local Rule 74.1. Plaintiff appeals Magistrate Judge Chang's ruling on the Settlement Agreement. On August 24, 2001, Defendant Kakinami also timely filed a Written Statement of Appeal contesting Magistrate Chang's rulings on both the Settlement Agreement and Defendant Yano's Motion to Amend the Cross–Claim. Defendant Duvauchelle filed a joinder in Defendant Kakinami's appeal on August 30, 2001. On September 1, 2001, Defendant Yano filed an Opposition. Plaintiff later joined Defendant Kakinami's Written Statement of Appeal on September 17, 2001.[2]

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without hearing.

**2.** Although Defendant Duvauchelle and Plaintiff joined after Local Rule 73.3 and 74.2's 10 day deadline for appealing a Magistrate's Order lapsed, the Court acknowledges that they joined in Defendant Kakinami's timely appeal and did not raise new issues or arguments.

### STANDARD OF REVIEW

The applicable standard of review for an appeal of a magistrate's order turns on whether the order is dispositive or nondispositive. *See* 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3068.2 (2d ed.1997); Fed.R.Civ.Proc. 72(a), 72(b). Pursuant to F.R.C.P.Rule 72(b), this Court must apply a de novo standard of review to magistrate orders dispositive of a claim or defense of a party. *See* Fed.R.Civ.P. 72(b) (2001), *Kiep v. Turner,* 80 B.R. 521, 523 (D.Haw.1987). De novo review means the Court must consider the matter anew, as if it had not been heard before and as if no decision previously had been rendered. *United States v. Silverman,* 861 F.2d 571, 576 (9th Cir. 1988). Although the district court need not hold a de novo hearing, the Court's obligation is to arrive at its own independent conclusion on those parts of the magistrate's order that a party objects to. *See United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989); *see also* Local Rule 7.2(d) (stating "[t]he court, in its discretion, may decide any motion without a hearing"). With respect to nondispositive matters, however, this Court reviews a magistrate judge's ruling for clear error. *See* Fed.R.Civ.P. 72(a); *Bhan v. NME Hospitals,* 929 F.2d 1404, 1414 (9th Cir. 1991); *Kiep,* 80 B.R. at 523. Under the "clearly erroneous" standard, the lower court's ruling must be accepted unless, after reviewing the entire record, this Court is " 'left with the definite and firm conviction that a mistake has been committed.' " *Silverman,* 861 F.2d at 577–76 (citing *United States v. United States Gyp-*

*See United States v. Candler,* 133 F.3d 929, 1998 WL 4727 (9th Cir.1998) (unpublished opinion). The Court notes that it is not relying on this unpublished decision, pursuant to U.S.Ct. of App.9th Cir.Rule 36–3.

*sum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

■ The dispositive-nondispositive distinction is rooted primarily in F.R.C.P.Rule 72 ("Magistrate Judges; Pretrial Orders") and linked to Rule 72's enabling statute 28 U.S.C. Section 636. *See* 12 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3068.2 (2d ed.1997). Title 28 of the United States Code, Section 636(b)(1)(A) lists eight pretrial motions unsuitable for determination by a magistrate judge: (1) injunctive relief, (2) judgment on the pleadings, (3) summary judgment, (4) dismiss or quash an indictment or information made by defendant, (5) suppress evidence in a criminal case, (6) dismiss or to permit maintenance of a class action, (7) dismiss for failure to state a claim upon which relief can be granted, and (8) involuntarily dismiss an action ("exceptional dispositive motions").[3] *See* 28 U.S.C.A. § 636(b)(1)(A) (West 1993). However, motions not among the eight listed are nevertheless reviewed under the de novo standard if the

reviewing Court determines it is "dispositive". *See* 12 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3068.2 (2d ed.1997). Motions that involve determination of the merits of the case, or that do not involve a collateral matter, or that are critical in shaping the nature of litigation are generally considered "dispositive." *Kiep*, 80 B.R. at 523–24. Black's Law Dictionary defines "dispositive" as "bringing about a final determination." BLACK'S LAW DICTIONARY 484 (7th ed.1999).

## DISCUSSION

### I. Enforcement of the Settlement Agreement[4]

■ Although Plaintiff and Defendants Kakinami and Duvauchelle (collectively "Movants") acknowledge that the Boskoff–Yano settlement agreement does not include a provision requiring dismissal of Defendant Yano's Counter- and Cross–Claims,[5] they nevertheless move the Court to read into the settlement agreement such a provision. Movants assert that adding a "dismissal of all claims" provision is consis-

---

**3.** Wright, Miller & Marcus, Federal Practice and Procedure, refer to these eight motions as "exceptional dispositive motions" in its discussion of the dispositive-nondispositive dichotomy. *See* 12 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3068.2 (2d ed.1997).

**4.** The Court will construe Magistrate Chang's Order regarding the Settlement Agreement as a finding and recommendation and apply the de novo standard in its review. The Court acknowledges that Movants' Motion to Enforce the Settlement Agreement is analogous to a Motion to Dismiss, an "exceptional dispositive motion," in that Movants' success would preclude Defendant Yano from pursuing his Counter- and Crossclaims. *C.f. Ocelot Oil Co. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir.1988) (viewing motion to strike pleading with prejudice as the equivalent of a motion for involuntary dismissal of an action and thus a dispositive motion). Moreover, whereas this Court is unaware of authority to the contrary, at least one other

court has determined that a motion to enforce a settlement agreement is of the nature of a dispositive motion. *See Engineered Data Products, Inc. v. Art Style Printing, Inc.*, 71 F.Supp.2d 1073, 1077 (D.Colo.1999) (plaintiff's motion to enforce settlement agreement constituted a dispositive motion such that magistrate's order was reviewable de novo). The parties do not provide the Court with an applicable standard of review with respect to either of Magistrate Chang's orders.

**5.** Movants argue that the settlement agreement is not complete because it is missing an essential provision, the dismissal of *all*, meaning both Plaintiff and Defendant Yano's, claims. *See* Plaintiff's Motion to Enforce Settlement Agreement at 9 (stating "the written settlement agreement that Plaintiff executed is an incomplete memorialization of what the parties intended evidenced by the correspondence. . . . Further, the settlement agreement only relates to Plaintiff dismissing her claims and is silent with respect to Defendant Yano's counterclaim and cross-claim").

tent with the intent of the parties as evidenced by the correspondence preceding the settlement. As such, this Court should enforce Movants' version of the settlement agreement and issue an Order dismissing Defendant Yano's Counter- and Cross-Claims. Plaintiff contends that the parol evidence rule is inapplicable because of the existence of an ambiguous term and because the document "does not constitute a total integration of the parties' intent since it left out a material and essential term." Plaintiff's Reply (Motion to Enforce Settlement Agreement) at 8. Alternatively, Movants make a number of arguments. They contend that the Boskoff–Yano agreement is unenforceable due to the absence of a material term, mistake and/or no meeting of the minds and that the parties should be placed in their pre–Boskoff–Yano settlement positions. Movants also assert that the doctrines of equitable and promissory estoppel bar Defendant Yano from refusing to dismiss his Counter- and Cross-Claims.

Defendant Yano, on the other hand, argues that the settlement agreement is an integrated document such that the parol evidence rule prohibits consideration of extrinsic evidence that varies or alters the terms of the written agreement. Defendant Yano also contends that Plaintiff's acceptance of the settlement proceeds in the amount of $1,000 per month for 14 months from Defendant Yano bars her from attempting to set aside the settlement agreement.

 Because " '[t]he construction and enforcement of settlement agreements are governed by principles of local law,' " *United Comm. Ins. Serv., Inc. v. Paymas-*

ter Corp., 962 F.2d 853, 856 (9th Cir.1992) (citing *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1989)), the Court will construe the Boskoff–Yano settlement agreement according to principles of Hawaii contract law.[6] See *Dowsett v. Cashman*, 2 Haw. App. 77, 81, 625 P.2d 1064 (1981). As is the case in many jurisdictions, Hawaii law "favors the resolution of controversies through compromise or settlement rather than by litigation." *State Farm Fire & Cas. Co. v. Pacific Rent–All, Inc.*, 90 Hawai'i 315, 323, 978 P.2d 753 (1999) (citing *Dowsett*, 2 Haw.App. at 82–83, 625 P.2d 1064).

 Movants argue that it was the intent of the parties that "all claims," including Defendant Yano's Counter- and Cross Claims, would be dismissed pursuant to the settlement agreement. Defendant Yano counters that the written agreement essentially speaks for itself and that the parol evidence rule bars consideration of extrinsic evidence to vary the terms of the document. According to Hawaii law, when construing a written agreement "courts should not draw inferences ... regarding the parties' intent when the [agreement] is definite and unambiguous." *State Farm Fire & Cas.*, 90 Hawai'i at 324, 978 P.2d 753 (citation omitted). "A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning." *Airgo, Inc. v. Horizon Cargo Transport Inc.*, 66 Haw. 590, 594, 670 P.2d 1277 (1983) (citations omitted). Where a writing is found to be clear, unambiguous and "the final and, therefore, integrated expression of the parties' agreement," the parol evidence rule[7] bars evidence of prior or contempo-

---

6. The application of Hawaii law is further supported by Paragraph L of the Boskoff–Yano agreement which states "This Agreement is entered into in the State of Hawai'i and shall be construed and interpreted according to its laws."

7. The parol evidence rule "is one of substantive law setting forth the well-settled principle that an agreement reduced to writing serves to integrate all prior agreements and negotiations concerning the transaction into the written instrument which then represents the final and complete agreement of the parties."

raneous negotiations and agreements that contradict the terms of the writing. *See In re O.W. Ltd. Partnership,* 4 Haw.App. 487, 490, 668 P.2d 56 (1983), *State Farm Fire & Cas.,* 90 Hawai'i at 324, 978 P.2d 753. Thus, "[o]nce the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it." *Akamine & Sons, Ltd. v. Am. Security Bank,* 50 Haw. 304, 310, 440 P.2d 262 (1968). The parol evidence rule, however, only applies to enforceable contracts and thus extrinsic evidence should be considered in assessing defenses to contract formation. *See Local Motion, Inc. v. Niescher,* 105 F.3d 1278, 1280 (9th Cir.1997) (citing *MPM Hawaiian Inc. v. World Square,* 4 Haw.App. 341, 345–46, 666 P.2d 622 (1983)).

■ The Boskoff–Yano settlement agreement is clear and unambiguous. After defining "Releasors" as "Plaintiff, her heirs, personal representatives, administrators, successors, insurers, attorneys, and assigns" and "Releasees" as "Defendant Yano, his heirs, personal representatives, administrators, successors, insurers, attorneys, and assigns," the settlement agreement clearly states:

> In consideration of the payment of the sum of one Thousand Dollars ($1,000) herewith and the promise of payment of an additional Fourteen Thousand Dollars ($14,000) by Defendant Yano as set forth herein and other good and other valuable consideration, *Releasors do hereby fully and finally release,* acquit and forever discharge Releasees, from and against any and all claims, demands, liabilities, damages, actions, costs, costs of suit, or causes of action of any kind and every nature whatsoever (hereinafter collectively called "Claims") *which*

*Releasors have,* or have ever had, or may ever have, whether known or unknown at the date of this Agreement ... against Releasees, resulting from, arising out of, to arise out of, or connected with, directly or indirectly, the following subject areas:

> (a) Defendant Yano's legal representation of Plaintiff in the Underlying Litigation;

> (b) All claims which were asserted or could have been asserted in the Underlying Litigation;

> (c) All incidents and circumstances alleged in Plaintiff's Complaint and the Litigation;

> (d) All claims which were asserted or could have been asserted in the Litigation against Defendant Yano;

> (e) All claims of Releasors relating to or arising out of the Litigation or the Underlying Litigation, and

> (f) All statements, actions, representations, or admissions made by the Releasees, or any of them, with respect to any of the foregoing Claims. Collectively, the Claims described herein are referred to as the "Released Claims."

Defendant Yano's Opp. to Motion to Enforce Settlement Agreement, Ex. A at 2 (emphasis added).

The Boskoff–Yano agreement unambiguously calls for Plaintiff's release of all claims and other consideration in exchange for Defendant Yano's payment of $1,000 plus $14,000 to be paid in installments of $1,000 per month. The term "Released Claims" clearly refers to Plaintiff's claims only; the agreement is silent as to Defendant Yano's responsibility to do anything more than timely make the monthly payments. The Boskoff–Yano Agreement certainly does not appear to contemplate a mutual obligation on Defendant Yano's

*Cosmopolitan Fin. Corp. v. Runnels,* 2 Haw. App. 33, 37, 625 P.2d 390 (1981).

part to release his claims against Plaintiff or anyone else. Notably, the Stipulation prepared and executed in conjunction with the settlement agreement is entitled "Stipulation for Dismissal with Prejudice as to All *Plaintiff's* Claims." *See* Def. Yano's Opp. to Appeal at Ex. A (emphasis added). As the written agreement is clear and definite, the Court may not draw inferences regarding the parties' alleged contrary intent. *See Dowsett,* 2 Haw.App. at 82–83, 625 P.2d 1064.

Moreover, the Boskoff–Yano Agreement is integrated, the final expression of the agreement. Paragraph O of the agreement is a merger clause that provides:

> This Agreement contains the entire agreement between Plaintiff and Defendant Yano with regard to the matters set forth herein. There are no other understandings or agreements, verbal or otherwise, in relation thereto, between the parties.

Defendant Yano's Opp. to Motion to Enforce Settlement Agreement, Ex. A at 7. On the same page, Plaintiff, as well as Plaintiff's Attorney Richard Rost, signed the document. *Id.*

While Movants contend that an agreed upon provision, "dismissal of all claims," was omitted, they do not specifically argue, nor does it appear ingenuous for Movants to argue, that the document Plaintiff executed and signed (and that was approved by Plaintiff's attorney) on July 5, 2000 was not intended to be the final expression of the settlement agreement.[8] Because the Boskoff–Yano agreement is fully integrated, the parol evidence rule bars consideration of the Movants' assertions that the parties intended that Defendant Yano would release his Counter- and Cross–Claims. *See State Farm Fire & Cas.,* 90 Hawai'i at 325, 978 P.2d 753 (holding that the settlement agreement at issue in the case, which contained a merger clause, "appear[ed] to be fully integrated" and that as "an integrated document, the parol evidence rule bar[red] consideration of Marn's [a party to the agreement] belated assertions that he did not intend to settle his property damage claim"). Because a provision for the release of Defendant Yano's Counter- and Cross–Claims would alter the terms of the written agreement, the Court may not consider Plaintiff and Defendant Yano's prior negotiations and correspondence despite Movants' urging to the contrary. Accordingly, the Court will not enforce Movants' version of the settlement agreement and likewise will not order the dismissal of Defendant Yano's Counter- and Cross–Claims.

Movants argue in the alternative that the settlement agreement is unenforceable due to the absence of a material term, namely a provision requiring Defendant Yano to dismiss his Counter-

---

**8.** Movants argue that the settlement agreement "does not constitute a total integration of the parties' intent since it left out a material and essential term." Integration, however, turns on whether the parties intended the document to be the final expression of the agreement. *See In re O.W. Ltd. Partnership,* 4 Haw.App. 487, 490, 668 P.2d 56 (1983) (equating "integration" with the final expression of the parties' agreement). Movants do not contend that Plaintiff and Defendant Yano contemplated executing a subsequent or a separate agreement providing for the dismissal of Defendant Yano's Counter- and Cross–Claims. In fact, Movants appear to argue that the actual settlement agreement was entered into prior to the signing and execution of the written Boskoff–Yano agreement. However, because "an agreement reduced to writing serves to integrate all prior agreements and negotiations concerning the transaction into the written agreement which then represents the final and complete agreement of the parties," the Boskoff–Yano settlement agreement appears to be fully integrated. *Cosmopolitan Fin. Corp.,* 2 Haw.App. at 37, 625 P.2d 390.

and Cross–Claims. Hawaii law instructs that "[t]o be enforceable, a contract must be certain and definite as to its essential terms." *Boteilho v. Boteilho*, 58 Haw. 40, 42, 564 P.2d 144 (1977) (citation omitted); *see also Clarkin v. Reimann*, 2 Haw.App. 618, 627, 638 P.2d 857 (1981). An "essential term," however, is not merely a term that one of the parties views as "essential" to inducing his or her assent, as Movants seem to imply, but rather a term integral to the contract itself, such as a price term specifying the monthly rent or a term indicating how rent should be calculated in a lease agreement, as was the case in *Clarkin. See Clarkin*, 2 Haw.App. at 628, 638 P.2d 857. A provision requiring Defendant Yano to dismiss his claims, though important to the Movants, is not essential to the settlement agreement itself. In fact, as pointed out earlier, the settlement agreement clearly establishes that only Plaintiff's claims are to be released, with Plaintiff being defined as the "Releasor," Defendant Yano as "Releasee" and the "Released Claims" defined as only Plaintiff's claims; that is, the agreement obviously contemplates the release of only Plaintiff's claims. Indeed, the dismissal attached to the settlement agreement is entitled "Stipulation for Dismissal with Prejudice as to All Plaintiff's Claims."

 Movants argue that the parties should be returned to their pre–Boskoff–Yano settlement positions because there was no meeting of the minds. Hawaii law requires that there "be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." *Honolulu Rapid Transit Co. v. Paschoal*, 51 Haw. 19, 27, 449 P.2d 123 (1968). To determine whether there was a "meeting of the minds" the Court will consider the parties' correspondence leading up to the settlement agreement. *See Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir.1997) (citing *MPM Hawaiian Inc. v. World Square*, 4 Haw.App.

341, 345–46, 666 P.2d 622 (1983), for the proposition that the parol evidence rule only applies to enforceable contracts and thus extrinsic evidence should be considered in assessing defenses to contract formation).

Movants contend that Plaintiff's assent to the terms of the settlement agreement was contingent on Defendant Yano's dismissal of his claims. *See* Declaration of Catherine Boskoff at ¶ 5. However, the correspondence between the parties indicates that there was a "meeting of the minds" on May 16, 2000 when Plaintiff accepted Defendant's offer, made on April 20, 2000. *See* Plaintiff's Motion to Enforce Settlement Agreement, at Ex. 9, 7. In the May 16, 2000 letter addressed to Defendant Yano's counsel, Plaintiff, through her attorney, expressed willingness "to accept the offer of $15,000 payable at $1,000 per month." The May 16, 2000 letter, while confirming Mr. Yano's obligation to make timely monthly payments, is silent as to a corresponding obligation on his part to dismiss his claims. In fact, the letter expressly states "[w]e will execute a stipulation for dismissal with prejudice in return for the signed settlement agreement which will contain Mr. Yano's promise to pay the settlement consideration." *Id.* at Ex. 9. Again, insistence on a provision calling for dismissal of Defendant Yano's claims is absent. Additionally, the written settlement agreement clearly indicates that Plaintiff agreed to release all of her claims in exchange for $15,000, to be paid by Defendant Yano over a period of time, and nothing more. Finally, the stipulation succinctly dismisses Plaintiff's claims only. *See* Stipulation filed 7/31/00 (stating "it is hereby stipulated by and between Plaintiff and Defendant Thomas Yano that all claims of the Plaintiff against Defendant Thomas Yano are hereby dismissed with prejudice ..."). Despite that Plaintiff's decision to settle according to the terms of

the written agreement seems of questionable reasoning given that she must defend against Defendant Yano's Counter–Claim and defend and indemnify Defendants Kakinami and Duvauchelle against Defendant Yano's Cross–Claims, the circumstances indicate that Plaintiff and Defendant Yano simultaneously agreed to the release of Plaintiff's claims in exchange for $15,000 to be paid in monthly increments. Because the written agreement is "definite and unambiguous," this Court may not "draw inferences ... regarding the intent of the parties." *See State Farm Fire & Cas.,* 90 Hawai'i at 324, 978 P.2d 753.

■■■■■■ Movants also argue mistake. In *AIG Hawaii Ins. Co. v. Bateman,* 82 Hawai'i 453, 923 P.2d 395 (1996), the Hawaii Supreme Court held that a contract is voidable "where one party is mistaken as to a basic assumption supporting the contract at the time of its making—if the mistake is material and has an adverse effect to the agreed exchange of performances—so long as (1) the mistaken party has not borne the risk of the mistake and (2) enforcement of the contract would not be unconscionable, or the other party had reason to know of the mistake or caused the mistake." *State Farm Fire & Cas.,* 90 Hawai'i at 315, 978 P.2d 753 (citing *Bateman,* 82 Hawai'i at 457–58, 923 P.2d 395). Movants fail to establish the requirements necessary to void the contract because Plaintiff (the mistaken party) bore the risk of her mistake. Plaintiff does not explain why she signed and executed a document agreeing to release her claims against Plaintiff without a reciprocal promise on Defendant Yano's part to release his Counter- and Cross-claims. As the parties were engaged in nearly three years of contentious litigation, it seems obvious that Plaintiff[9] and her counsel should have carefully read the proposed agreement and insisted on the inclusion of a specific provi-

sion requiring Defendant Yano to dismiss his claims, if her assent was truly conditional on such a provision, before signing the document and stipulating to the unilateral release of her claims. Movants' argument that Defendant Yano should have drafted the settlement agreement so as to specifically reserve his Cross- and Counter–Claims does not excuse Plaintiff's and her attorney's asserted oversight.

■■■■■■ Additionally, Movants argue that the doctrines of equitable and promissory estoppel bar Defendant Yano from refusing to dismiss his Counter- and Cross–Claims. Hawaii law instructs that "where one by his words, or conduct, willfully causes another to believe the existence of a certain state of things, and induced him to act on that belief so as to alter his previous position, the former is precluded from averring against the latter a different state of things, as existing at the same time." *Waimea Falls Park, Inc. v. Brown,* 6 Haw.App. 83, 98, 712 P.2d 1136 (1985) (citations omitted). However, the party seeking to invoke the doctrine of equitable estoppel "must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable." *Id.* (citations omitted). The reliance element may be dispensed with in order to prevent manifest injustice. *Id.* (citing *Filipo v. Chang,* 62 Haw. 626, 633, 618 P.2d 295 (1980)). The elements of the related doctrine of promissory estoppel include: (1) a promise; (2) the promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise; (3) the promisee does in fact rely upon the promisor's promise; and (4) enforcement of the promise is necessary to avoid injustice. *In re Herrick,* 82 Hawai'i 329, 337–38, 922 P.2d 942 (1996).

9. Notably, Plaintiff is a licensed attorney. *See* Declaration of Catherine Boskoff at ¶ 2.

Neither equitable nor promissory estoppel applies in the instant case. Equitable estoppel requires a representation and reasonable reliance. Although it appears that at one point during the settlement negotiations Defendant Yano offered to release his claims against the Movants and pay Plaintiff $15,000 in exchange for Plaintiff's dismissal of her claims, Plaintiff rejected that offer. *See* Plaintiff's Motion to Enforce Settlement Agreement at Ex. 2 and 3. Later, on April 20, 2000 Defendant Yano offered (represented/promised) Plaintiff the "sum of $15,000, payable in increments of $1,000 per month, in return for a full release of all claims and an indemnity agreement." *Id.* at Ex. 7. It does not appear from subsequent correspondence between the parties and from the settlement agreement that Defendant Yano represented/promised, or even that Plaintiff expected, that he would release his claims.[10] Moreover, even assuming that Defendant Yano ultimately represented to/promised Plaintiff that he would release his claims, it would be unreasonable for Plaintiff to blindly rely upon an adversary's representation in lieu of careful review and thoughtful consideration of the written settlement agreement.[11] It appears from the circumstances that the interests of justice prevent, rather than require, the Court from enforcing Defendant Yano's defunct offer.

In summary, the Boskoff–Yano settlement agreement is an enforceable contract. The requirements of offer, acceptance and consideration were met and memorialized in a written settlement agreement on July 5, 2000.[12] *See Dowsett,* 2 Haw.App. at 82–83, 625 P.2d 1064 (stating that "a compromise settlement, like other contracts, requires an offer and acceptance, consideration, and parties who have the capacity and authority to agree as they do"). Movants' arguments—absence of an essential term, no meeting of the minds, and mistake—neither establish a viable contract formation defense nor justify invalidation of the settlement agreement. Thus, principles of contract interpretation and the parol evidence rule apply.

The terms of the agreement are clear and unambiguous. The agreement clearly calls for Plaintiff's release of claims against Defendant Yano in exchange for $15,000 to be paid in monthly increments. Because the document is integrated, the parol evidence rule bars Movants from proffering extrinsic evidence to vary the terms of the written agreement. Lastly, the doctrines of equitable and promissory estoppel are inapplicable. Thus, the Court DENIES Plaintiff's and Defendants Kakinami and Duvauchelle's Written Statement of Appeal From Magistrates Order Granting in Part and Denying in Part Plaintiff's

---

**10.** It is well settled that rejection of an offer terminates the offer. *See Guzman v. Visalia Community Bank,* 71 Cal.App.4th 1370, 1376, 84 Cal.Rptr.2d 581 (1999), *Dataserv Equip., Inc. v. Technology Fin. Leasing Corp.,* 364 N.W.2d 838, 841 (Minn.Ct.App.1985), *McClure Ins. Agency, Inc. v. Hudson,* 238 Ark. 5, 377 S.W.2d 814, 815 (1964), *In re Johnston's Will,* 164 Misc. 469, 298 N.Y.S. 957, 960 (1937).

**11.** The circumstances surrounding the formation of the settlement agreement are not so extraordinary so as to justify elimination of the reliance element.

**12.** First, Plaintiff accepted Defendant Yano's offer of May 15, 2000 by letter dated May 16, 2000. Second, the stated consideration was that in exchange for $15,000, payable in monthly increments of $1,000 Plaintiff would release her claims. *See* Plaintiff's Motion to Enforce Settlement Agreement at Ex. 9. Defendant Yano argues that Plaintiff's acceptance of fourteen monthly payments bars Plaintiff from setting aside or altering the terms of the settlement agreement. Finally, there is no dispute as to whether Attorneys Rost and Greeley were authorized to act on behalf of their clients.

Motion for Order Enforcing the Settlement Agreement.

## II. Amendment of Defendant Yano's Cross–Claim[13]

■ Defendant Kakinami (as well as Defendant Duvauchelle & Plaintiff by joinder) (collectively "Opposing Parties") appeal Magistrate Chang's Order Granting Defendant Yano's Motion for Leave to Amend his Cross–Claims against Defendants Duvauchelle and Kakinami. The Opposing Parties contend that Magistrate Chang erred because (1) Hawaii's six year statute of limitations[14] bars Defendant Yano from asserting a breach of contract claim because the alleged breach took place nine years ago, (2) Defendant Yano's delay is inexcusable, and (3) the Opposing Parties are prejudiced by allowing the amendment. *See* Defendant Kakinami's Written Statement of Appeal at 13. Defendant Yano, on the other hand, appears to argue that amendment of his Cross–Claims is not prejudicial to the Opposing Parties, that his original Cross–Claim contemplated a breach of contract action, and the liberal standard favoring amendment supports Magistrate Chang's Order Granting him leave to amend his Cross–Claim. *See* Defendant Yano's Opp. to Defendant Kakinami's Written Statement of Appeal at 10–11.

■ F.R.C.P.Rule 15(a) allows a party to freely amend a pleading "when justice so requires." *See* Fed.R.Civ.P. 15(a) (2001). In exercising its discretion, this Court must be mindful of Rule 15's underlying purpose "to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). Four factors should be considered to determine the propriety of a motion to amend: bad faith, undue delay, prejudice to the opposing party, and futility of the amendment. *Id.* Prejudice to the opposing party is the most important factor. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).

By order dated August 15, 2001, Magistrate Chang found "the absence of undue prejudice to the other party, undue delay, bad faith or futility." *See* Order Granting Leave to Amend dated 8/15/01 at 6. Judge Chang specifically found that Defendant Yano's Motion to Amend was timely filed on June 1, 2001 based on the deadline set by the Rule 16 Scheduling Order and that Defendant Yano's breach of contract claim related back to the filing of the initial Complaint under F.R.C.P. Rule 15(c), and therefore was timely notwithstanding H.R.S. Section 657–1(1). With regard to the prejudicial effect to the parties, Magistrate Chang could not conclude "that the allowance of Yano's proposed amendment would be unduly prejudicial to the other parties" and stated that "[t]he facts and circumstances underlying Yano's proposed

---

**13.** The Court will review Magistrate Chang's Order granting Defendant Yano leave to file first amended cross-claim for "clear error." Generally, a motion for leave to amend the pleading is considered to be a non-dispositive matter. *See* 14 James Wm. Moore et al., Moore's Federal Practice § 72.02 (3d ed.2000) (citing *United States Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 (9th Cir.1985), for the proposition that motion for leave to amend complaint properly treated as nondispositive motion); *Health Corp. of Am. v. New Jersey Dental Assoc.*, 77 F.R.D.

488, 490 (stating that motion to add an omitted counterclaim is a non-dispositive motion).

**14.** Hawaii Revised Statutes ("H.R.S.") Section 657–1(1) provides:

The following actions shall be commenced within six years next after the cause of action accrued, and not after:

(1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court. . . .

Haw.Rev.Stat. § 657–1(1) (1995).

amended Cross–Claim are well known to the parties, and there has been ample opportunity for discovery and to prepare a defense." *See* Order Granting Leave to Amend dated 8/15/01 at 7.

■ The Opposing Parties contend that Defendant Yano cannot amend his Cross–Claim to include an additional breach of contract claim because more than nine years has elapsed since the alleged breach.[15] The applicable statute of limitations, set forth by H.R.S. Section 657–1(1), is six years. Defendant Yano contends, and the Court agrees, that his amendment relates back to November 24, 1997, the date he initially asserted his Cross–Claims against Defendants Kakinami and Duvauchelle and that as such the breach of contract claim is timely filed.

■ F.R.C.P. Rule 15(c) provides:

An amendment of pleading relates back to the date of the original pleading when

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

Fed.R.Civ.P. 15(c)(2) (2001). According to the Ninth Circuit, the "justification for this rule is that once litigation has been instituted, a party should not be entitled to the protection of the statute of limitations against the later assertion of a claim or defense arising out of the same conduct, transaction or occurrence already in dispute." *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir.1982). Relation back is proper where the opposing party had notice of the factual basis of the added claim and the added claim arises out of the same conduct, transaction or occurrence as set forth by the initial pleading. *See id.*

The Opposing Parties argue that Defendant Yano's breach of contract claim virtu-

ally amounts to "trial by ambush." *See* Defendant Kakinami's Written Statement of Appeal at 12. Magistrate Chang, however, specifically found that the facts and circumstances underlying Defendant Yano's proposed amended Cross–Claim are well-known to the parties. Numerous factors support the Magistrate's conclusion. First, Plaintiff's Complaint alleges that Defendants Yano and Duvauchelle agreed to work together in a joint effort to defend Plaintiff and her ex-husband Kenneth Boskoff. *See* Complaint at ¶ 8. Second, in paragraph 8 of Defendant Yano's Answer, to which his Cross–Claim is attached, Defendant Yano asserts that he submitted draft pleadings to Defendant Duvauchelle for Duvauchelle's review and for signature by Plaintiff and Mr. Boskoff. *See* Def. Yano's Answer at ¶ 8. It appears that Defendant Yano repeatedly characterized his representation of Plaintiff as "joint" between himself and Defendant Duvauchelle. Third, it is also apparent from an Order issued by this Court on October 27, 1998 that whether Defendant Yano and Defendant Duvauchelle agreed to associate and who would be liable for injuries suffered by Plaintiff were already in issue. *See* Order Denying Defendant Kakinami and Duvauchelle's Motion for Summary Judgment dated 10/27/98. Lastly, Defendant Yano's Opposition to Plaintiff's Motion in Limine Excluding Evidence Regarding Defendant Yano's Indemnity Claim Against Defendants Duvauchelle and Kakinami reveals the parties' awareness that Defendant Yano intended to argue the existence of an agreement between Defendant Duvauchelle and himself and Defendant Duvauchelle's responsibility under that agreement to monitor the court file. *See* Defs.Opp. to Pltf.'s Mot. in Limine filed 2/18/99. Defendant Yano has maintained in the past that the alleged

---

15. The Opposing Parties contend that the alleged breach occurred on May 28, 1992.

joint-defense agreement and Defendant Duvauchelle's alleged breach for failure to monitor the file gives rise to his right to indemnification. Thus, the Opposing Parties had notice of the facts alleged and of the added claim; Magistrate Chang correctly held that Defendant Yano's proposed amendment relates back under F.R.C.P. Rule 15(c).

■■■ The Opposing Parties also argue that Defendant Yano's amendment is untimely. Magistrate Chang, however, found the absence of undue delay, a finding seemingly based on the fact that the deadline for filing motions had not yet lapsed. The Ninth Circuit's test for undue delay does not appear to consider technical filing deadlines but rather inquires "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir.1990). Based on this standard, Defendant Yano's motion to amend his Cross–Claim is untimely. Defendant Yano was well aware of the circumstances giving rise to the breach of contract theory and should have alleged the facts and claim four years ago when he initially filed his Cross–Claims against Defendants Duvauchelle and Kakinami.

■■■ The law in this jurisdiction, however, clearly does not permit denial of a motion to amend a pleading based on undue delay alone. A specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment is necessary. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.1999) (commenting that undue delay by itself is insufficient to justify denying a motion to amend); *DCD Programs*, 833 F.2d at 186–87.

■■■ The Opposing Parties argue that Defendant Yano's "brand new" breach of contract claim is prejudicial. The Opposing Parties point out that trial is set for January 8, 2002; that the discovery cut-off deadline is November 9, 2002; and that the deadline to file dispositive motions and make expert disclosures lapsed on August 8, 2001. The Opposing Parties also claim that little discovery has been conducted on this "new issue." Magistrate Chang, however, specifically found an absence of undue prejudice and that "there has been ample opportunity for discovery and to prepare a defense."

The Court cannot conclude that Magistrate Chang's findings are clearly erroneous. Although Defendant Yano did not specifically allege a breach of contract in his initial Cross–Claim, the theory is not "new" to the parties. As discussed previously, Defendant Yano's intent to argue that Defendants Duvauchelle and Kakinami were responsible, per a joint-defense agreement, for monitoring the Boskoffs' court file became manifest during the early stages of this litigation. These are the allegations that support Defendant Yano's indemnity Cross–Claims; Defendant Yano's breach of contract claim does not change the legal theory or require proof of different facts. *Contra Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990) (finding undue prejudice where the "additional claims advance different legal theories and require proof of different facts"). Thus, because Defendant Yano's amendment does not alter the positions of the parties, neither Defendant Duvauchelle, Kakinami nor Plaintiff, who under the terms of the Boskoff–Kakinami Agreement must indemnify Defendants Duvauchelle and Kakinami,[16] are prejudiced. Defen-

---

16. The Stipulation dated 9/22/99 states that Defendants Kakinami and Duvauchelle were to "remain in the case only as Defendants for the purpose of apportionment of liability of damages." Because liability for contribution and apportionment is predicated on the

dants Duvauchelle and Kakinami should have prepared and conducted sufficient discovery to defend against these claims. Moreover, it does not appear that the trial date or discovery deadline will significantly impair defense of the Cross–Claims.[17]

Likewise, the Court cannot conclude that Magistrate Chang's findings with respect to bad faith and futility were clearly erroneous. Although the Opposing Parties characterize Defendant Yano's proposed amendment as adding a new breach of contract claim, upon close examination, it appears that the proposed amendment merely conforms Defendant Yano's pleading with the parties' understanding that Defendant Yano's right to indemnity and contribution derives from the Cross–Claim Defendants' alleged breach of a purported joint-defense agreement.[18] While Defendant Yano ideally should have made these allegations initially, given that the theory was well-known and the subject of various motions [19] before this Court, it does not appear that Defendant Yano's current attempt to amend the Cross–Claim constitutes bad faith. Moreover, this Court's denial of Defendant Duvauchelle and Kakinami's Motion for Summary Judgment on Defendant Yano's Cross–Claims indicates that Defendant Yano's breach of contract claim is not futile.

In summary, Magistrate Chang's findings: 1) that H.R.S. Section 657–1(1) does not bar Defendant Yano's breach of contract Counter–Claim due to its relation back under F.R.C.P.Rule 15(c) and 2) that

Defendant Yano's proposed amendment was not futile, not unduly prejudicial to the Opposing Parties, and not brought in bad faith are not clearly erroneous. Although the Court finds undue delay, this factor alone does not justify denial of Defendant Yano's Motion to Amend, especially in light Rule 15's policy of favoring amendments, and Magistrate Chang's finding that the Opposing Parties were not unduly prejudiced. Accordingly, the Court finds that Magistrate Chang's Order Granting Defendant Yano's Motion for Leave File First Amended Cross–Claim is not clearly erroneous.

## *CONCLUSION*

Based on the foregoing, the Court DENIES Plaintiff's and Defendants Kakinami and Duvauchelle's Appeal from Magistrate's Order (1) Granting in Part and Denying in Part Plaintiff's Motion to Enforce the Settlement Agreement and (2) Granting Defendant Yano's Motion for Leave to File First Amended Cross–Claim.

IT IS SO ORDERED.

breach of the joint defense agreement (similar to the contract claim), the amendment does not abrogate the Stipulation entered into by the parties.

**17.** However, if the Opposing Parties, through a petition, demonstrate a good basis for extending these deadlines, the Court will give their request due consideration.

**18.** Even Plaintiff argues that Defendant Yano .·must allege the existence of an independent

contractual agreement between Defendant Duvauchelle and himself to succeed on his indemnity claim. *See* Plaintiff's Opp. to Defendant Yano's Motion to Amend Cross–Claims at 7–10.

**19.** *See* Pltf.'s Mot. in Limine Excluding Evidence Regarding Def. Yano's Indemnity Claim and Defendant Yano's Opp.; Order Denying Defs.' Kakinami and Duvauchelle's Motion for Summary Judgment filed 10/27/98.